This action was brought in the Superior Court of the city of New York, for the recovery of a sum of money received by the defendants from officers of the government of the United States, for the transportation of certain government stores from New York, to the navy yard at Mare's Island, California.
The plaintiffs were nonsuited upon the trial, and the General Term sustained the ruling and gave judgment for the defendants.
From the pleadings and evidence, it appeared that the firm of Wells Emanuel, of the city of New York, had, before the 5th day of July, 1859, chartered and hired a certain vessel called the "B.D. Metcalf," for a voyage to be made from New York to San Francisco, for the transportation of goods and merchandise. That, early in July, 1859, said firm procured from the United States naval store-keeper at New York, the freight mentioned in a bill of lading executed, "for the captain," by the said firm, consisting of government stores, to be transported upon said vessel to Mare's Island, California, at a specified rate, amounting in all to $1,882.84, payable in New York, upon return of the bill of lading signed by the commanding officer at Mare's Island, certifying to the delivery of the articles named therein. That, on the 21st of *Page 333 
July, 1859, the said firm, in consideration of $1,500, paid them by the plaintiffs, who were consignees at San Francisco, of said freight, indorsed upon said bill of lading an order to pay the amount of freight to the plaintiffs, and delivered the same, so indorsed, to the plaintiffs. That the said stores were transported, in said vessel, to Mare's Island, and delivered to the commanding officer of the United States navy yard at that place, who certified, upon the bill of lading, the delivery of the articles therein named, in good order, except a few articles damaged or lost, to the amount of $32.87. That upon the return of the bill of lading to New York, the naval store-keeper, at that place, deducted said sum from the freight bill, and certified the balance, $1,849.97, as the correct charge for said freight, which was approved by the commandant of the navy yard; on which freight bill so certified, the said firm indorsed an order to pay the amount of freight therein mentioned to the plaintiffs.
That, subsequently thereto, the defendants, on behalf and in the name of the captain of the vessel, forbade payment for the freight to the plaintiffs, and presented to the naval store-keeper at New York, a bill for the same, in the captain's name, as payable to him. This bill was duly certified by the store-keeper, and approved by the commandant, and, upon a bond of indemnity being executed to the government, was paid to the defendants, for the captain, and receipted by them in his name. This claim, so made by the defendants, was based, as it would seem, upon the ground that Wells Emanuel, were not, under the terms of their charter-party, entitled to the moneys arising from this freight, but that the same belonged to the owners of the vessel.
I am not able to see how the facts in the case show any cause of action against the defendants in favor of the plaintiffs.
If it were admitted that the navy agent should have paid the money to the plaintiffs, and not to the defendants, still there is no such relationship between these parties as entitles the plaintiffs to claim of the defendants the money paid to them. The plaintiffs' counsel suggests that the money paid *Page 334 
was a trust fund in favor of the plaintiffs, of which the defendants had notice.
Although it is true that the defendants had notice of the plaintiffs' claim to be paid for the freight in question, the counsel is mistaken, I think, in regarding the money paid to the defendants as a trust fund. The proper officers of the government had audited the plaintiffs' bill for the freight, but that was not an appropriation of the money paid to the defendants, to the payment of the plaintiffs' bill. There is nothing to show any such appropriation of a particular fund for the plaintiffs' benefit, as to raise a trust in their favor. When two claimants for the same service apply for payment to the party bound to pay for the same, one of whom is recognized as the person entitled to payment, and is paid, to the exclusion of the other, who is in fact alone entitled to payment, the party so excluded derives no right from the circumstances, to the money paid to his competitor. It is not money received to his use, for the payment thus made does not in any respect affect his right still to call on his debtor for payment to himself. And it makes no difference whether such debtor is an individual or the government. The obligation of the debtor to him still remains wholly unaffected.
The case of Bradley v. Root (5 Paige, 632) is relied upon by the plaintiffs' counsel to sustain the plaintiffs' claim to the money from the defendants. That case rests upon a very different state of facts from this, and well shows under what circumstances a trust may be held to arise in respect to money paid to one person to which another is entitled.
In that case the holder of a mail contract from the post-office department assigned it to the complainant, who took upon himself the duty to carry the mail according to the contract, during its continuance, and was to receive therefor all the moneys which should become payable under the contract, according to the terms thereof. No notice of this assignment was given to the postmaster-general. Afterward the assignor, who was insolvent, gave the defendant an order upon the postmaster-general for the moneys which might *Page 335 
become payable on the contract, to indemnify him against a responsibility which he had incurred as indorser for the assignor. The defendant took the order, having notice of the assignment. After the moneys had been earned by the complainant, under the contract, the defendant presented his order to the postmaster-general, and received thereon $430. And it was held by the chancellor that he was equitably bound to pay it over to the complainant.
These were the elements of a trust. The defendant, knowing that the complainant was assignee of the contract upon which the money was payable when he took his order, and that the complainant had, himself, earned the money by performance of the contract when he presented the order, received money, which, from want of notice to the postmaster-general of the assignment of the contract, paid for the services rendered by the complainant, and satisfied the contract under which they were rendered. This money, which thus extinguished the complainant's claim upon the government for his services, and which, as between him and the defendant, belonged to the complainant, was in equity his money, and the defendant thus obtaining it, while cognizant of the complainant's equitable right to it, was well regarded as holding it in trust for the complainant.
In the case at bar, the plaintiffs' rights being in no respect affected by the payment made to the defendants, the money paid cannot be regarded as plaintiffs'. There is no ground for making defendants trustees of the money for the plaintiffs, nor for holding that it is money received to the plaintiffs' use.
The judgment appealed from is right, and should be affirmed.
All the judges concurring,
Judgment affirmed. *Page 336