CALVIN L. HATHAWAY, Supervisor, etc., Appellant, v. THE TOWN OF CINCINNATUS, Respondent.

Where an agent is employed by several principals the common employment creates a relation and privity between the principals such as will sustain an action for money had and received by one against another to recover moneys belonging to the former, paid over by the agent to the latter.

Patrick v. Metcalf (37 N. Y., 332); Butterworth v. Gould (41 N. Y., 450) distinguished.

Under the call for troops of July, 1864, the town of S., Cortland county, was required to furnish seventeen men for one year. Certain volunteers

had been procured by the county, and their bounties paid; they had been mustered into the service, and credited to the county. An agreement was made between the town and county whereby, in consideration of the payment by the town of the sum expended by the county in procuring said volunteers, it consented to their transfer to the credit of the town. This payment was made, and the credit transferred to the town by authority and direction of the provost marshal. A credit was thus obtained for an excess of thirty-one years, to apply on the call of December, 1864. Under the provision of the act (§ 2, chap. 29, Laws of 1865) providing for a refund of bounties, the State, through its paymaster-general, settled with and paid to a committee appointed by the board of supervisors of Cortland county, the amount claimed for excess of years furnished by the several towns thereof, including the thirty-one years so credited. In the schedules presented by the committee the thirty-one years were not credited to the town of S., but to other towns, defendant being credited with three years. The paymaster-general did not recognize the towns in making the payment, but kept his account with the county, using the schedule simply to ascertain the aggregate number of years excess furnished from enlistments in the county. The committee knowing of the claim of the town of S., by direction of the board of supervisors, paid to defendant the sum received from the State for the three years so credited to it. In an action to recover the money so paid, *held*, that the committee received the refund as agents for the different towns; that the right to demand and receive it existed in the towns, not in the county, and the sum paid for the thirty-one years rightfully belonged to and its payment discharged the claim of the town of S.; that in the absence of explicit evidence to the contrary, it could not be presumed that the State undertook to determine how the money paid to the committee should be distributed as between the towns; and that the action could be maintained.

Also, *held*, that the action was properly brought in the name of the supervisor of the town of S.

(Argued April 22, 1875; decided September 21, 1875.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court upon trial without a jury.

This action was brought by plaintiff, as supervisor of the town of Solon, Cortland county, to recover, as for moneys had and received, certain moneys alleged to have been received from the State as a refund for bounties belonging to said town, which had been paid over to the defendant.

The court found, in substance, that on the 18th day of July, 1864, the president of the United States issued a call for 500,000 men for the military service. That the town of Solon, and each of the other towns in the county of Cortland, was a sub-district in the twenty-third district, and western division of the State of New York. That the quota of said town of Solon, under said call, was twenty men, but which was reduced by previous credits to seventeen. That in the month of September, 1864, a draft was being made in said town to fill said quota. That previous thereto, fourteen men had been enlisted and mustered into the United States service by the county of Cortland, and credited to said county, their bounties having been paid by the county. That, about the 16th day of September, 1864, an arrangement was made between the war committee for that county, appointed by the board of supervisors, and the town of Solon, whereby these men were transferred from the credit of the county to the credit of the town of Solon, to aid in filling the quota of said town under the call aforesaid, and for which transfer the town paid to said committee the sum paid by it to procure their enlistment, which was passed into the treasury of the county, or was paid out for its benefit. That the transfer of these men to the credit of the town of Solon, on her quota aforesaid (excepting one who was afterwards transferred to the credit of the town of Cortlandville), was approved and directed to be made by an order in writing, issued by the acting assistant provost marshal general of the western division of the State of New York, directed to the provost marshal of the twenty-third district of said State, and bearing date, the 23d day of September, 1864.

That, by an official communication in writing, dated the 27th day of September, 1864, the provost marshal of the said twenty-third district informed the acting assistant provost marshal general aforesaid that his order for the transfer of these men to the credit of the town of Solon had been complied with. That, with the aid of the men thus

transferred to the credit of the town of Solon, the quota of the town, under the call of July 18, 1864, was filled, and the town thereby relieved from the draft under said call. That at the time these men were so transferred to the town of Solon, the quotas of all the other towns in the county of Cortland, under said call, were filled. That the thirteen men who were transferred from the credit of the county of Cortland to the credit of the town of Solon, were enlisted and mustered into the United States service for the term of three years each, except two, and they were so enlisted and mustered for the term of one year each. That on the 30th day of December, 1864, the board of supervisors appointed a volunteer bounty committee, consisting of Messrs. Phillips, Van Hoesen and McGraw. And at a subsequent meeting of the said board of supervisors on the 14th day of April, 1865, the said committee was "instructed to take such measures and make such applications as shall be necessary under the act of the legislature (Laws of 1865, chap. 29), to secure the reimbursements to the county, and the several towns in the county, for money paid as bounties to volunteers." That pursuant to the provisions of said act, and about the 2d day of August, 1865, the said committee obtained from the paymaster-general of the State reimbursement money for excess of years of ten volunteers who had enlisted for the term of three years each, and one volunteer who had enlisted for the term of one year, all under the call of July 18, 1864, and all of whom were of the volunteers transferred from the credit of the county of Cortland to the credit of the town of Solon under said call. That the money for excess of years of said eleven men was paid to the said committee by the paymaster-general of the State; and, on the 17th day of November, 1865, the committee so reported in writing, signed by the members thereof, to the board of supervisors of the county of Cortland. That said money belonged to the town of Solon, but was distributed to eleven other towns of said county, including defendant. That the amount

received out of said money by the town of Cincinnatus, through its supervisor, was $540, which amount was applied to the benefit of the town, in reduction of the taxes thereof For which sum, with interest, judgment was ordered.

*Horatio Ballard* and *Milo C. Goodrich* for the appellant. This action was properly brought, on the part of plaintiff, in the name of its supervisor, and, on the part of defendant, against the town of Cincinnatus by name. (2 R. S., 473, §§ 92, 93; *Suprs. of Galway* v. *Stimpson*, 4 Hill, 136; *Comrs. of Highways* v. *Peck*, 5 id., 215; *Overseer, etc.,* v. *Ely*, H. & D., 379; *Town of Duanesburgh* v. *Jenkins*, 4 Barb., 295; Barb. on Parties, 104, 105; 1 R. S., 357, §§ 1, 2; id., 337, § 3; Code, §§ 144, 148; *Patchen* v. *Peck*, 38 N. Y., 39; *Newman* v. *Suprs. Liv. Co.*, 45 id., 67; *People* v. *Hawkins*, 46 id., 9.)

*M. M. Waters* for the respondent. Cortland county was the donee of the legislature of all the reimbursement money in question. (Laws of 1865, chap. 8, § 22; 34 N. Y., 516; 46 id., 70.) The arrangement as to transfer of credits was a nullity. (55 N. Y., 1; 1 R. S., 364; § 4; Act of Congress, March 3, 1863, §§ 3, 4, 5, 6, 12; Act of Congress, Feb. 24, 1864, §§ 1, 2; Act of Congress, July 4, 1864, §§ 1, 2; 23 N. Y., 140; 3 Keyes, 620; 1 Pet., 193, 213; 4 Wash., 570, 573, 574; 4 Hill, 635; 2 Den., 224; 46 Barb., 84.) This action cannot be maintained by plaintiff in his official capacity. (Code, §§ 111, 113, 468; 1 Den., 510; 1 R. S, 337, § 3; id., 357, § 2; 1 Kern., 390; 3 R. S., 473, §§ 92, 93; 32 N. Y., 477; 1 Cow., 260; 5 id., 312; 18 J. R., 418; 4 Hill, 137; 4 Den., 272; 19 Wend., 55; 3 id., 193; 7 id., 181.) Conceding the claim of the town of Solon against the State, this action cannot be maintained against defendant. (17 Wend., 94; 6 Duer, 463; 19 N. Y., 499; 5 Seld., 211; 34 Barb., 298; 37 id., 129; 11 Paige, 612; 4 Ired. Eq., 94; 4 Humph., 233; 3 Edw., 583; 4 id., 219; T. & B. Trusts and Trustees, 481.) Although the payment to defendant's supervisor did

not operate to discharge the payer from liability to plaintiff or his town, there was no trust and no implied promise to pay the money to plaintiff. (54 N. Y., 655; *Butterworth* v. *Gould*, 41 id., 450; *Patrick* v. *Metcalf*, 37 id., 332.) The defendant is not liable for the act of its supervisor in receiving the money. (56 N. Y., 87; 11 id., 392, 574, 575; 55 id., 1, 187; 45 id., 676; 12 Barb., 161, 165; 42 id., 79; 22 id., 634; 21 id., 578; 27 id., 543, 551; 8 id., 643; 24 Wend., 387; 49 Barb., 507; 45 N. Y., 196; 10 id., 260; 29 id., 645; 30 How., 173, 184; 2 Sand., 460; 1 Hun, 554.)

ANDREWS, J. Provision was made by chapter 29 of the Laws of 1865, for a State bounty to volunteers, to fill the quota of men required for the army and navy of the United States, under the call of the President of December 19, 1864, and the calls which might thereafter be made during the rebellion. The bounty was to be paid out of the treasury of the State, and the money required for the purpose was to be raised by taxation, or by loan on the credit of the State. In either case the burden would fall upon its taxable property, and each locality would bear its proper proportion according to the amount of taxable property within its limits.

The quota under the call of December 19, 1864, had not at the time of the passage of the act, been completely filled, but many of the towns and cities of the State had furnished men under the call to whom bounties had been paid, or had been credited, or were entitled to credit, on that call, for excess of men, or of years' service of men furnished, under the previous call of July 18, 1864, to whom bounties had been paid under chapter 8, of the laws of that year. It was manifestly just, that as the expense of filling the quota of the localities, which had not at the time of the passage of the act of 1865, furnished the men required, or had furnished them only in part, was made a charge upon all the taxable property of the State, the towns and cities which by means of local bounties (raised and paid before that act was passed), had furnished men who were credited on the call of

December, 1864, should be reimbursed to the extent of the bounty authorized to be paid by that act. It was therefore provided in the second section as follows : " And when before the passage of this act, any town, city or county, by means of local bounties raised and paid under chapter 8 of the Laws of 1864, shall have filled its quota, or any part thereof, required by the call of December 19th, 1864, or shall have furnished an excess of men, or of years of service, under the call of July 18th, 1864, by furnishing men for one or more years, who being or having been credited before or since said call of December 19th, 1864, to said town, city or county, shall have operated to relieve in whole or in part, said town, city or county, from furnishing men under the call of December 19th, 1864, the bounties so raised and paid, not exceeding the rates and sums mentioned in this act, shall be refunded from the moneys to be obtained, or by the bonds to be issued under the provisions of this act."

The act (chap. 8 of the Laws of 1864) referred to in the part of the act of 1865 above quoted, was passed February 9, 1864, and section 22 contains this provision : " The boards of supervisors of the several counties in this State are hereby authorized and empowered, at any meeting of the said board, duly called and convened, to adopt resolutions to provide for raising money upon the credit of their respective counties, for the use of said county, or upon the credit of any city or town thereof, for the sole use of said city or town, or to levy and impose a tax upon the taxable property of their respective counties for the use of said county, or upon any town or city thereof, for the sole use of said town or city, for the purpose of paying bounties to volunteers into the military or naval service of the United States during the existence of the war now carried on, etc., but no such money shall be raised on the credit of any town, nor shall any tax for money, etc., be levied or imposed upon the taxable property of said town, except upon a vote of a majority of the electors of said town," etc.

The town of Solon, one of the towns of Cortland county,

was required, under the call of July 18, 1864 (after being allowed certain credits), to furnish seventeen men for one year, and in September, 1864, seventeen men were drafted from the town to fill its quota. The drafted men were never mustered into the service. Before the time for muster arrived, a committee, appointed at a town meeting and acting in behalf of the town, secured seventeen volunteers to be credited to the town on its quota, thereby relieving the drafted men from the obligation of service. The men thus credited to Solon had, with a few exceptions, enlisted for three years, and in the aggregate for thirty-one years' service in excess of the seventeen years' service required to be furnished by that town under the call, and for this excess of years' service, Solon was credited under the call of December of that year, and this credit operated *pro tanto* to relieve it from furnishing men thereunder.

It is an undisputed fact in the case, that in August, 1865, the State, through its paymaster-general, paid to a committee, appointed by the board of supervisors of Cortland county, $30,600 in money and bonds, that being the amount claimed under chapter 29 of the Laws of 1865, for excess of years' service furnished by the several towns of Cortland county, under the call of July, 1864, for which reimbursement was due under that act.

It is found by the judge, at Special Term, that the payment made by the State included an allowance for the thirty-one years' excess of service furnished by Solon. The payment was made on a schedule obtained by the committee from the provost marshal's office at Elmira, showing the whole number of excess of years' service furnished from the county of Cortland, and allotting to each town a number which, in the aggregate, corresponded with the whole number of excess of years' service shown by the schedule. In this allotment, Solon was not credited with the thirty-one years' excess of service furnished by her, but by some error they were credited to the other towns of the county, the town of Cincinnatus being credited with three of those years. The State,

under the law, paid at the rate of $200 for each year's excess of service. The committee subsequently paid over the money to the several towns, which, by the schedule, appeared to be entitled to it, and the town of Cincinnatus received $600 on account of the erroneous credit thus given. This action is brought by the town of Solon to recover this sum as money had and received by the defendant to its use.

It is important to ascertain in the outset whether the right to demand the money from the State, under the act of 1865, for the thirty-one years' excess of service credited to Solon existed in favor of that town, or was vested in the county of Cortland. Plainly, under the facts found, the town of Cincinnatus had no shadow of claim to any part of it. It neither furnished the men, nor paid the bounties, and no ground is suggested upon which it could have called upon the State for any payment on account of the men furnished by Solon. It is claimed, however, by the counsel for the defendant, that the reimbursement under the act was due to the county of Cortland, and if this claim can be sustained. the plaintiff has no right of action, and the remedy, if any, to recover the money received by the defendant, is through an action in behalf of the county.

The men credited to Solon, whose enlistment created the excess of years' service which was allowed to that town in reduction of its quota on the December call, were procured at Newberne, North Carolina, in the summer and fall of 1864, by an agent acting in behalf of Cortland county, and were mustered into the service and credited to the county. The bounties were paid by the county in the first instance, and at the time these men were enlisted and credited, the quota of all the towns in the county, under the July call, had been filled except that of the town of Solon. An arrangement was then made between the town of Solon and the war committee of the county, which was afterward ratified by the board of supervisors, whereby, in consideration of the payment by the town to the county of the sum expended by the county in procuring the men, the county consented to their transfer to

the credit of that town. The payment was secured by the individual guarantee of citizens of Solon, and thereupon by the authority and direction of the provost marshal, the credit was transferred from the county to the town, and by this credit, together with a few other enlistments, Solon filled its quota. The board of supervisors, at the November session in that year, levied a tax upon Solon for the amount agreed to be paid to the county, which, in due course, was collected out of the taxable property therein, and the county received the sum to which it was entitled, under the agreement referred to.

The equitable claim of Solon to the reimbursement money upon these facts is too plain for argument. The county had been refunded all it had paid for bounties and expenses by Solon; the men were credited by the proper authorities to that town; and when the December call was made, Solon was recognized as entitled to be credited for the excess of years' service created by their enlistment.

I am also of opinion that, by the reasonable and true construction of the act of 1865, Solon has the legal right to demand from the State reimbursement to the amount allowed by the act for the thirty-one years' excess of service. The town met the conditions under which reimbursement was allowed, substantially if not technically. It had furnished, by means of local bounties, an excess of years' service under the July call, which was credited on the December call, and operated in part to relieve the town from furnishing men under it. And the bounties were, I think, within the true meaning of the act, raised and paid under chapter 8 of the Laws of 1864. The bounties in the first instance were, it is true, advanced and paid by the county, but the town refunded them by means of a tax levied upon the town by the board of supervisors, with the assent, as may be inferred from the evidence, of the majority of the electors. This money was raised and paid for bounties, though not paid directly to the volunteers. The town by the transaction took the place of the county, and the county, under the circumstances disclosed in the

case, may' well be deemed, by relation, to have been the agent of the town in enlisting the men. The county, on the other hand, was not, within the act, entitled to reimbursement. It had no quota to fill under the July call. The quotas were assigned to towns and cities, and not to counties. Each congressional district in this State constituted an enrollment district, and each town in the district was required to furnish its ratable number of men, but no requisition was • made upon counties as such. (12 Stat. at L. [U. S.], 731 ; 13 id., § 378.) Again, the excess of years' service did not operate to relieve the county from furnishing men under the December call, which was also one of the conditions on which reimbursement was allowed, for the plain reason already given, that no duty to furnish men rested upon it. It requires a very strict and technical construction of the act to deny the right of Solon to the reimbursement money. It is manifest that the legislature designed the provision in question as indemnity to the localities which had expended money and contracted debts for bounties. It could not have intended that a county should receive from the State, for its own use, money which it had expended, but which had been repaid by one of its towns. For the reasons stated, I am of opinion that Solon, and not the county, was the rightful claimant of this fund.

The question then arises, whether the money was paid by the State or received by the defendant under circumstances which authorize its recovery in this action. That Solon was entitled to the reimbursement money, and that Cincinnatus has received a part of the money which the State paid on account of the men credited to Solon, has been shown. The defendant invokes in its defence the protection of the principle, that when a debtor owes a debt which two persons not in privity with each other, severally claim, and the debtor pays the debt to one in recognition of his claim, and in repudiation of the claim of the other, and it turns out that the latter was the rightful claimant, he cannot recover of the former the money paid

by the debtor.   The cases of *Patrick* v. *Metcalf* (37 N. Y., 332), and *Butterworth* v. *Gould* (41 id., 450), are cited in support of this doctrine.   These cases proceed upon the ground that the remedy of the creditor is not in any way impaired by the transaction, and upon the absence of any privity between the parties.   The creditor may proceed to recover his debt, and the fact that the debtor has paid it to the wrong person would constitute no defence.   There is an equity that the person receiving the money upon the invalid claim should restore it, but it is an equity in favor of the person by whom it was paid, and not in favor of the creditor.   There is no privity between the creditor and the party who received the money, and no relation between them out of which a duty from one to the other arises.   The doctrine of the cases cited does not I think control this case. The State in paying over to the committee the money, did not undertake to determine whether the county or the towns were entitled to it, or how as between the several towns it should be distributed.   The duty of the State officers under the act was to pay over the reimbursement money to or for the benefit of the counties, cities or towns entitled to it, and in the absence of clear evidence of a contrary intention it must be presumed that they intended the payment for the benefit of the municipal corporation in which the right to the money resided.   It is true that the schedule upon which the payment was made, purported to show what proportion of the whole number of years' excess of service for which payment was claimed, had been furnished by each of the towns. But the towns as such were not recognized by the paymaster-general.   He used the schedule to ascertain the single fact upon which the payment was predicated, viz., the aggregate number of years' excess of service furnished under the July call from enlistments in the county of Cortland, and when that number was ascertained he paid the sum required in gross to the committee.   He did not attempt to apportion the money to the different towns, " or to determine as between the towns whether the credits were properly given

or not." His account was kept with the county. The county was credited on the books of the State, with excess of years, and charged with the payment. But it is manifest that this was done for convenience merely, and not because the State officers had decided that the county was the party entitled to the money. The resolution under which the committee acted instructed them to take such measures, and make such application as was necessary under the act " to secure reimbursement to the county and the several towns in the county for moneys paid as bounty to volunteers." This authority was exhibited to the State officers, and it imports on its face that the towns claimed reimbursement under the act, and in the absence of explicit evidence to the contrary, it cannot be supposed that the State in making the payment intended to repudiate the claim of the towns and affirm the right of the county to the fund. The committee acted as the common agents of the towns and county to collect the money to which they were entitled under the act, and it would be a complete answer to a claim now to be made by Solon against the State, that it had paid to its authorized agent the money due to that town. The fact that no claim was specifically made in behalf of Solon, is an immaterial circumstance. The claim of Solon was known to the committee, and that the schedule presented embraced the excess of years' service, for which it was entitled to reimbursement. The omission to credit this excess to that town in the schedule and giving credit therefor to other towns, grew out of the fact that the records of the provost marshal's office at Elmira did not show the transfer to Solon through the provost marshal's office at Syracuse, of the seventeen men originally credited to the county of Cortland.

The committee, when they received the reimbursement money, held it for the towns to which it rightfully belonged, and it was their duty to pay over to Solon the part received for the thirty-one years' excess of service furnished by that town. Having paid it to the other towns, the question is, whether an action lies in behalf of Solon against the towns

receiving it, to recover it as for money had and received for its use. It was Solon's money when it was received by the committee. The payment by the State discharged the claim of Solon under the act of 1865. The committee were the agents of all the towns. They paid out of the fund in their hands, to some of the principals, a share which belonged to another. Equity and good conscience demand that it should be restored to the rightful owner. It is said that to maintain this action there must be a privity between the plaintiff and defendant in respect to the transaction, and that no such privity exists. Privity is a relation which creates obligation. It does not require privity of contract between the parties to maintain the equitable action for money had and received; and there is that privity here which will maintain the action. The defendant has obtained possession of the plaintiff's money without consideration, and has received it through the error of their common agent. The defendant cannot be allowed to profit by it at the plaintiff's expense. The common employment and the common agency creates a relation between the parties, and the privity which will support the action. The action for money had and received is an equitable action, and the disposition of courts is to enlarge rather than limit the sphere of its operation. I think the action can be maintained in this case within the principles upon which the action for money had and received is founded. (*Hudson* v. *Robinson*, 4 M. & S., 478; *Cary* v. *Curtis*, 3 How. [U. S.], 247; *Pierce* v. *Crafts*, 12 J. R., 90; *Wright* v. *Butler*, 6 Wend., 284; *Buel* v. *Boughton*, 2 Den., 91; *Mason* v. *Waite*, 17 Mass., 560; *Hall* v. *Marston*, id., 575.)

I am not certain that this opinion conflicts with the case of *Hathaway* v. *The Town of Homer* (briefly reported in 54 N. Y., 655). The facts shown in that case do not fully appear in the report. We should differ, in any case, with great hesitation from the learned court by which that case was decided; but we feel constrained upon the facts appearing upon the record before us, to hold that the action can be maintained.

There are several exceptions to evidence brought to our attention. The material facts were established by competent evidence; and no question is presented by the exceptions which called for a reversal of the judgment of the Special Term. The action was well brought in the name of the supervisor of Solon against the town of Cincinnatus within recent decisions in this court. (*Town of Lewis* v. *Marshall*, 56 N. Y., 663.; *Town of Guilford* v. *Cooley*, 58 id., 116.)

The order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs.

All concur; MILLER, J., not sitting.

Order reversed, and judgment accordingly.