ISAAC MITCHELL, as Supervisor of the TOWN OF ORLEANS, Respondent, v. GEORGE H. STROUGH, SAMUEL W. GATES, SIMON FOLTS, RUSSELL B. BIDDLECOME, ALDEN F. BARKER, THE CLAYTON AND THERESA RAILROAD COMPANY, ISAAC MAYNARD, THE UTICA AND BLACK RIVER RAIL-ROAD COMPANY, Appellants, and Others.

*Right of a supervisor to sue to recover damages for injuries sustained by a town — an action against railroad commissioners, for the wrongful issue of bonds, accrues when the bonds are issued — it is barred in six years — the commissioners may properly act in reliance upon the decision of the county judge until it is reversed.*

The supervisor of a town has authority to maintain an action against persons who, by their wrongful and fraudulent conduct, have created a debt which the town will be compelled to pay.

This action was commenced in 1879 to recover damages alleged to have been sustained by the town of Orleans by reason of the wrongful and fraudulent acts of certain of the defendants who, as railroad commissioners of the town, had without authority issued certain bonds of the town in exchange for the stock of a railroad company. The bonds were delivered to the company by the commissioners in April, 1872, and were never thereafter returned to them or made subject to their control.

*Held,* that the right of action against the commissioners accrued upon the delivery of the bonds and was barred by the six years' statute of limitation.

*Town of Ontario* v. *Hill* (33 Hun, 250) followed.

In July, 1871, the county judge, after taking proofs, decided that a proper application for the issue of the bonds of the town had been made and appointed commissioners to issue them. A *certiorari* to review this decision was allowed and a return thereto was made in December of that year. The matter was argued at a General Term in May, 1872, and the decision was there affirmed, but on appeal to the Court of Appeals it was reversed on February 24, 1873. In April, 1872, the commissioners issued the bonds, and the same were received and thereafter used by the company.

*Held,* that the commissioners and company were entitled to act upon the decision of the county judge until it was reversed, and that if it was desired that the commissioners should be restrained from issuing the bonds during the pendency of the litigation an order to that effect should have been procured.

Appeal by each of the defendants, except West and Graham, from a judgment in favor of the plaintiff, entered on a verdict against the defendants so appealing, and also from an order deny-

ing a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The Clayton and Theresa Railroad Company was incorporated on the 7th of February, 1871, having capital stock to the amount of $250,000, to construct a road about sixteen miles long, from Clayton to a point on the Black River and Morristown Railroad. It ran through the towns of Clayton, Orleans, Theresa and Philadelphia, in Jefferson county. About seven miles of it extended through the town of Orleans. On the 3d of May, 1871, certain tax-payers of the town of Orleans applied to A. H. Sawyer, under chapter 907 of the Laws of 1869, by petition, to have the town bonded to the amount of $80,000. A hearing, pursuant to notice given, was had in June, 1871, before the county judge. He, on the 1st of July, 1871, made his adjudication and determination in favor of the petitioners, and appointed the defendants Strough, Gates and Folts commissioners for the town. The record of his proceedings was filed in the county clerk's office of Jefferson county on the 3d of July, 1871, and the commissioners during the same month received their commission from the county judge and filed in the county clerk's office their oaths of office. On the 2d of April, 1872, the commissioners, in the name of the town, subscribed for $80,000 of the stock of said railroad company, and the next day issued 160 bonds of the town of Orleans of $500 each. In January, 1873, the railroad company applied to the Utica and Black River Railroad Company for aid in procuring iron for the road. This resulted in the latter company aiding them to purchase the iron, and the Clayton and Theresa Company agreed to and afterwards, and in May, did deliver to the Utica and Black River Company 140 of said bonds, as security for the liability and indebtedness of the Clayton and Theresa Company to the Utica and Black River Company. On May thirty-first, the Clayton and Theresa Company authorized and directed defendant Maynard, who was treasurer of the Utica and Black River Company, to sell the bonds and pay over the proceeds to the Utica and Black River Company. On the 4th of February, 1874, Maynard sold these 140 bonds to Nathan E. Platt, of Chicago, and paid over the proceeds to the Utica and Black River Railroad Company. Platt brought suit against the town upon his 140 bonds in the United States Circuit Court for the Northern District of New

York. The town appeared and answered. The suit was tried in June, 1875. The plaintiff had a verdict and judgment for the three installments of interest, being the installments which came due in February and August, 1874, and February, 1875. The town made a case and exceptions, and by writ of error brought the case before the United States Supreme Court at Washington. The case was argued in that court and the judgment affirmed in the spring of 1879. In November, 1879, the board of supervisors of Jefferson county caused the amount of this judgment to be levied upon and collected from the tax-payers of the town of Orleans, and the judgment was paid and satisfied. In October, 1871, on the relation of tax-payers of the town of Orleans, a writ of *certiorari* was issued, directed to and served on the county judge and county clerk of Jefferson county to review the bonding proceedings had before the county judge. The judge and clerk made returns to the writ in December, 1871, and the case was heard at a General Term of the Supreme Court in May, 1872, and in June, thereafter, the General Term affirmed the proceedings and adjudication of the county judge. The relators appealed to the Court of Appeals, and that court on the 24th of February, 1873, announced its decision, by which the judgment of the General Term and the county judge were reversed.

This suit was commenced by a summons dated and issued May 31, 1879, and served a few days thereafter. The action is brought in the name of Mitchell as supervisor of the town, and is in the nature of an action on the case against the defendants, alleging that they fraudulently combined to and did issue the bonds and transferred them to a party living in another State, that he might prosecute them in the United States Circuit Court and make the town liable therefor. By means whereof, and the recovery of judgment by the said Platt against the town, the plaintiff had sustained damage to the amount of said $70,000 of bonds, with interest thereon from the 15th of August, 1873. On the trial the court directed the jury to and they did find a verdict in favor of defendant Graham. The jury found a verdict against the other defendants in favor of the plaintiff for $110,860.55, being the amount of said $70,000 of bonds, with interest thereon from the 15th day of August, 1873.

*Francis Kernan, H. E. Morse* and *W. F. Ford*, for the appellants.

*J. Lansing* and *Levi H. Brown*, for the respondent.

HARDIN, P. J. :

Appellants contend that the plaintiff, as supervisor, cannot maintain this action, and that if any liability exists by reason of the matters set forth in the complaint it is to the town of Orleans, and that the action should have been in the name of the town. It is not useful to consider whether the action might have been maintained in the name of the town. But, we must meet the question as to whether the action may be maintained by the supervisor as such, if a cause of action exists. It may be observed that the action is not upon contract express or implied ; it is an action on the case for wrongful and fraudulent conduct, alleged against the defendants, working a liability on the part of the town, thus exposing its property and rights to be injured by reason of the creation of a liability, which has ripened into an indebtedness of the town by means of which its credit, its property and rights may be injuriously affected.

*Griggs* v. *Griggs* (56 N. Y., 504) was an action against railroad commissioners, requiring them to account and pay over the proceeds of certain bonds of the town, and the right of the supervisor to maintain the action in his name as supervisor rested largely upon the third section of chapter 747 of the Laws of 1867, and it was declared that the intent of that statute was to authorize the supervisor to recover as such any moneys which the commissioners should wrongfully refuse to pay over. In the same volume, at page 663, the court is reported to have affirmed the case of the *Town of Lewis* v. *Marshall*, upon the opinion delivered at the General Term. That decision is explained in *Town of Guilford* v. *Cooley* (58 N. Y., 121), where GROVER, J., says : " It was held that section 92, volume 2, Statutes at Large, authorized the supervisor of a town to sue in his name of office upon any liability to the town, and hence a suit could not be brought thereon in the name of a town." * * * The case is also explained in *Hagadorn* v. *Raux* (72 N. Y., 584), and it is said the act of 1866 (ch. 534), was overlooked, and the court held that act required an action, to recover against a predecessor in office moneys and securities belonging to the town, to be brought in the name of the town and not in the name of the supervisor.

In *Town of Pierrepont* v. *Loveless* (72 N. Y., 217), it appears the right to maintain the action for damages caused by the destruction of a bridge across Racket river, caused by defendant's negligence, was not passed upon, though it was stated to be a question not free from difficulty.

In *Hathaway* v. *The Town of Cincinnatus* (62 N. Y., 434), it was held that the action was properly brought in the name of the supervisor to recover moneys alleged to have been received from the State by the defendant belonging to plaintiff's town, the court following with approval 56 New York, 663, and 58 New York, 116.

In *Bridges, as Supervisor of the Town of Liberty* v. *Supervisors of Sullivan County* (27 Hun, 175), it was held that an action to recover moneys collected on account of taxes imposed on a railroad which plaintiff claimed should have been paid to the town, and were withheld by the county, was properly brought in the name of the supervisor of the town of Liberty. That case was affirmed in 92 New York, 577, and RUGER, Ch. J., says : " It is enough to say here that the rights of the town have been invaded and that the *supervisor* is a proper person to bring an action for the protection of such rights." (Citing 62 N. Y., 434.) As the action before us is for an injury to the property and rights of the town of Orleans, we think the supervisor was authorized to maintain the action in behalf of the town. (*Sutherland* v. *Carr*, 85 N. Y., 111.) The latter case seems to be put upon the ground that a liability existed in favor of the town, and therefore the supervisor might maintain the action. If we are right in supposing that the supervisor was authorized by law to bring an action like the one before us, then no resolution of the town was necessary. (*Cornell* v. *The Town of Guilford*, 1 Denio, 510 ; *Town of Lyons* v. *Cole*, 3 T. & C., 431.) Since the foregoing was written the opinion of BARKER, J., in *Town of Kendall* v. *Holms et al., Railroad Commissioners*, has been examined and the cases cited by him, and the reasoning in that opinion accords with the views already expressed herein. That action was to obtain an accounting for moneys received by the railroad commissioners, and not used or deposited as required by law, and it was held that the action must be in the name of the supervisor and not in the name of the town.

We come now to inquire whether the plaintiff made out a case entitling him to recover of the railroad commissioners appointed by the county judge of Jefferson county for the town of Orleans. When they issued the bonds in behalf of the town the adjudication of the county judge was in force, and they were apparently clothed with power and right to subscribe for stock in the Clayton and Theresa Railroad Company, and to issue bonds in payment for the same in behalf of the town. Their commission was delivered to them on 3d July, 1871. The statute made it their duty "with all reasonable dispatch" to make and issue the bonds of the town. (Chap. 907, Laws 1869, p. 2305, §§ 3, 4, and 5.)

On the 2d of April, 1872, they subscribed for stock in the Clayton and Theresa Railroad Company, and on the 3d and 4th of April, 1872, they delivered the bonds after they were registered, and scrip taken therefor in the sum of $80,000. Their official action, so far as it purported to create any liability on the part of the town, was complete. They did nothing after that in respect to the bonds which could prejudice the town of Orleans or which could be the foundation of an action. This action was not brought until the 31st day of May, 1879, more than seven years after the completion of the acts of the commissioners in the premises. In April, 1872, the commissioners had parted with all control over the bonds; they had received the stock in behalf of their town, and the evidence fails to establish any fraudulent acts or practices by the commissioners as to the bonds committed or suffered by them. When the bonds were delivered to the Clayton and Theresa Railroad Company they were beyond the control of the commissioners, and at no time after that was it in the power of the commissioners to recall or cancel the bonds. The duty they were charged with by the statute in respect to the issue of the bonds was complete. Whatever wrong was perpetrated by the commissioners was complete in April, 1872. As this action was not brought within six years next after the last act of the commissioners, we think the six years' statute of limitations is a bar to the action. (*Town of Ontario* v. *Hill*, 33 Hun, 250.) That case is an authority upon the question now before us, as the opinion of BARKER, J., had the approval of all of the members of the court, and we should therefore follow it in disposing of the question made here in regard to the commissioners. (See *Northrop* v. *Hill*, 57

N. Y., 351; *Bank of Utica* v. *Childs*, 6 Cowen, 238; *Argall* v. *Bryant*, 1 Sand. Supr. Ct. R., 98, and cases there cited.)

We are of the opinion that the evidence did not warrant a finding that the commissioners were guilty of any fraud, nor that they were parties to the disposition made of the bonds by the Clayton and Theresa Railroad Company, when the bonds were pledged to the Utica and Black River Railroad Company, nor when the latter company or its officers caused the bonds to be sold to Mr. Platt.

It must be borne in mind that according to the theory of the plaintiff the bonds were not valid when in the hands of either of the railroads. We think the jury had no evidence before them from which they were warranted in finding any tortious or wrongful act on the part of the commissioners subsequent to the delivery of the bonds to the railroad company in April, 1872. As we have already stated, the adjudication of the county judge was in force then, and it was affirmed by the General Term at its June term in 1872. It follows that the commissioners did not receive any moneys or in any manner control the bonds of the town after April, 1872. They ceased to be commissioners in February, 1873, when the Court of Appeals reversed the adjudication. (*Biddlecom* v. *Newton*, 13 Hun, 582.)

We are of the opinion that the plaintiff had no cause of action against the commissioners for wrong, or for converting the bonds, or for having delivered them, not barred by the statute when this action was commenced in May, 1879. We therefore reach the conclusion that the learned circuit judge ought to have granted a nonsuit, as to the commissioners, and because of his error in that regard the order and judgment as to them should be reversed and a new trial ordered. As to the defendant, the Clayton and Theresa Railroad Company and its agents, it appears that the commissioners delivered to them the bonds ($70,000) in April, 1872. The judgment of the county judge remained unreversed, and it appears it was affirmed by this court in June, 1872. The *certiorari* did not affect the judgment as evidence as long as there was no reversal. (*Harris* v. *Hammond*, 18 How., 124; followed, in *Sage* v. *Harpending*, 49 Barb., 166.)

We think the evidence fails to establish that the railroad company or its officers, when the bonds were received, were engaged in

any intentional and actual fraud upon the town; on the contrary, it was then adjudicated that the commissioners had power to issue the bonds. As long as such power existed, the railroad company and its officers had the right to receive the bonds in payment for stock in the railroad company. We find in the evidence nothing to establish a fraudulent scheme or design then existing. Indeed, we think the evidence relied upon by the plaintiff does not establish a case warranting a jury in finding a fraudulent intent upon the part of the Clayton and Theresa Railroad Company or its officers, at the time the bonds were taken and pledged by the Clayton and Theresa Railroad Company to the Utica and Black River Railroad Company. There was an assertion of power and a belief in it, and action in accordance with the belief asserted. We do not find the evidence sufficient to sustain a verdict based upon fraud charged against the Clayton and Theresa road or its officers, for having taken the bonds of the town and delivered stock therefor. No stay of proceedings had been obtained to prevent the issuing of the bonds. If the town, or those acting in its behalf, had sought to prevent a delivery or sale of the bonds a stay should have been obtained. (*Delafield* v. *State of Illinois*, 2 Hill, 160; *Orleans* v. *Platt*, 99 U. S., 682.) In the latter case the court says: "The omission was gross laches. This negligence is the source of all the difficulties of the plaintiff in error (the town), touching the bonds. The loss, if any shall ensue, will be due not to the law or its administration but to the supineness of the town and the contestants." (*County of Ray* v. *Van Sycle*, 96 U. S., 675.) It may be observed that the United States Supreme Court also, in deciding that case, regarded the action of the county judge as binding until it was reversed. (99 U. S., 683.)

But it is insisted that the reception of the bond was wrongful and fraudulent. We think it more in harmony with the *status* of the parties at that time to infer that the commissioners supposed, as the adjudication of the county judge stood unreversed, that they had the power to issue the bonds, and that the railroad company and its officers had the right to receive them in payment for scrip or stock of the road. We are not prepared to hold, from the evidence before us, that the jury was warranted in finding that the bonds were taken fraudulently or with a preconceived design to

injure and defraud the plaintiff or his town, when they were pledged to the Utica and Black River Railroad Company to secure the performance of the contract between the two roads, or that the parties then considered it necessary to cause the bonds to be sold to a nonresident of the State.

That expedient subsequently was developed. When the *certiorari* issued in 1871, the commissioners were not parties to the proceedings as such, though the same persons as tax-payers may have been. The *certiorari* was statutory and removed questions of fact as well as of law. (Chap. 925, Laws of 1871, p. 2118 [vol. 2], § 4.) Power was conferred by the statute upon the court or a judge thereof to grant a stay of proceedings. Such power was not invoked, and the right to act in the belief that the proceedings were binding and valid remained. While it was undergoing review the adjudication of the county judge was protective, and though it was finally reversed it served as a justification for the commissioners who acted upon its validity. (*Van Steenbergh* v. *Bigelow*, 3 Wend., 43; *Porter* v. *Purdy*, 29 N. Y., 106.) It appears the adjudication of the county judge affirmed by the General Term was in full force up to the 25th of February, 1873, when it was reversed by the Court of Appeals for an erroneous ruling made by the county judge, in rejecting withdrawals of consents down to and upon the hearing. (*People ex rel. Irwin* v. *Sawyer*, 52 N. Y., 296.) When that decision was pronounced the Clayton and Theresa road and its officers had entered into an arrangement with the Utica and Black River Railroad Company, for a completion of the building of the Clayton and Theresa Railroad, and to induce the Utica and Black River Railroad Company to purchase and advance iron for the road bed, it had agreed to turn over the bonds held by it from the town of Orleans.

The iron was advanced and equitably the Utica and Black River Railroad Company was the owner of the bonds when the decision of the Court of Appeals was made in February, 1873. It was conceded upon the trial that "about the 1st of February, 1874, the defendant Maynard, by virtue of the authority contained in" a paper executed by the officers of the Clayton and Theresa Railroad Company, of May 31, 1873, sold the bonds in question to Mr. Nathan E. Platt, then a resident of Chicago, Illinois, and delivered over the proceeds to the Utica and Black River Railroad Company.

The written authority of the officers of the Clayton and Theresa road to Mr. Maynard recited that the bonds were held by the Utica and Black River Railroad Company as collateral security for the performance of the contract between the roads, and that the proceeds of any sale of the bonds were to be held by the Utica and Black River Railroad Company "as collateral security for the performance of the contract above mentioned." Maynard testified that he sold the bonds to Platt without giving him any notice of any litigation therefor. Platt became, as Maynard intended he should be, a purchaser without notice, and Maynard says that he "considered these were valid in the United States Court," and that one object in taking them into another State and selling them was that they "could be enforced in the United States Court."

He seems to have been more concerned with the effort to sell to a non-resident of the State, than with any effort to sell to one having no antecedent knowledge of the controversy. For it was then understood that there was a conflict between the decisions of the highest court of this State, and the United States Supreme Court. From the facts appearing in the case, it must be assumed that whatever rights the Theresa and Clayton Railroad Company had in the bonds, they acquired them while the adjudication was in force, and delivered stock for the bonds. Such rights thus acquired could be pledged to the Utica and Black River Railroad Company without any conversion of the bonds, and without the violation of any agreement that they should not thus be used. The case differs from Comstock v. Hier (73 N. Y., 269), where there was an agreement that the note indorsed by plaintiff should be used in a particular way. That agreement was broken. The note was converted, and the suit was for the conversion of the proceeds received upon the sale of the note by Hier. But we forbear to consider further the force and effect of the letter to Maynard of 31st May, 1873, signed by Clayton and Theresa officers, or the sale by Maynard, as officers of the Utica and Black River Railroad Company, and the obtaining funds upon such sale, and crediting the Clayton and Theresa Railroad Company therewith, in the books and accounts of the Utica and Black River Railroad Company, or whether the officers of the Clayton and Theresa, and the company, or the officers of the Utica and Black River Railroad Company, or the company, are liable for fraud, as

the question of fact has not been properly passed upon by the jury. The counsel for defendant requested the court to charge the jury " that neither Maynard, Barker nor Biddlecome was liable herein, if the jury found that he believed that the bonds were valid as against the town in the hands of the Clayton and Theresa Railroad Company to be used in construction of the road of that company and acted honestly in what he did in disposing of the bonds for that purpose." The court declined and defendants excepted. At a later stage of the case the court refused to charge that if Maynard acted in the belief that he had a right to transfer the bonds to a party residing out of the State he was not liable. This was refused and an exception taken. Then the court was asked " to charge that neither of the defendants is liable, unless the jury find that he acted fraudulently and in bad faith in what he did in reference to the bonds." The court said, viz. : " That I decline to charge. No. I will charge that," and in response to an interrogation of counsel for defendant he said that he charged " that neither of the defendants is liable, unless the jury find that he acted fraudulently and in bad faith in what he did in reference to the bonds." We are constrained to say that the jury was not put in full possession of the principles of law which should control in dealing with the questions of fact involved in the issues.

Some declarations of Gates, made to Garley in spring 1873, were received against all the defendants. What Gates said was not evidence against the others, unless there was a conspiracy established, so that his words would bind the other defendant. We have not seen such a conspiracy shown as would warrant his declaration. (*Cuyler* v. *McCartney*, 40 N. Y., 221.) A statement by Gates that the bonds " have gone to Canada and were sold there, * * * sold them at par and got the gold for them," was inadmissible, and the exception to the ruling admitting it was well taken.

We think the judgment and order should be reversed, and a new trial ordered, with costs to abide the event.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment and order reversed, and a new trial ordered, with costs to abide the event.