(37 Misc. Rep. 165.)

BACON v. GROSSMAN.

(Supreme Court, Special Term, New York County. February, 1902.)

PERSONAL GUARANTY—ASSIGNMENT—EFFECT.

A domestic corporation covenanting to dissolve a foreign corporation and distribute the assets agreed with the stockholders of the foreign corporation to guaranty, if they did not receive in liquidation $65 a share, to make up the difference, not exceeding $10; such stockholders promising to account to it for all the money received in liquidation in excess of such price. *Held* an agreement personal to the signers, and, where a party to the agreement transferred his stock subject to it, the guaranty of the domestic corporation did not pass to the transferee, and the stockholder is entitled to retain a payment under the guaranty.

Action by Nathaniel T. Bacon against Ignatius R. Grossman for money had and received. Complaint dismissed. Motion for new trial denied.

Selden Bacon, for plaintiff.
G. J. Sproull, for defendant.

BISCHOFF, J. Upon the dismissal of the complaint, I assumed, consistently with the contention of the plaintiff's counsel, that the guaranty hereinafter alluded to was assignable, but that it did not pass to the plaintiff's assignors as a mere incident to the transfer of the stock, and, since the transfer of the stock was made "subject to" the agreement between the defendant and the General Electric Company, that the plaintiff's assignors, as transferees thereof, acquired the stock in subordination to the rights of the General Electric Company, and with none of the benefits resulting to the defendant from that agreement. In other words, the transaction, as disclosed by the evidence, appeared to me to have been no more than a sale of the stock of the Northwest Electric Company to the plaintiff's assignors, after the defendant had sold to the General Electric Company his right as such stockholder to share in the distribution of the assets of the former company in excess of $65 per share, and that, by their acceptance of the stock "subject to" the agreement with the General Electric Company, the plaintiff's assignors acquired the right to receive for themselves their proportion of such assets, up to $65 per share, and nothing more. That the defendant, in consideration of the sale of his chance to participate in the distribution of the assets of the Northwest Electric Company in excess of $65 per share, accepted the guaranty of the General Electric Company to make good to him, up to $10 per share, any sum less than $65, no more entitled the plaintiff's assignors to the benefit resulting to the defendant from the prior sale than if the consideration for such

prior sale had been paid to the defendant in money, or in the promissory notes of the General Electric Company, in the absence of proof of something more than a mere transfer of the stock "subject to" the rights thereunder already sold. Granted that the defendant subsequently expressed his view that the proceeds of the guaranty received by him should inure to the benefit of the plaintiff's assignors, and that the General Electric Company concurred in that view, yet it remains that the defendant thereafter vigorously maintained his right to retain such proceeds, or that, in any event, they did not belong to the plaintiff's assignors; and if he is right in the latter contention, and the transaction upon which the plaintiff or his assignors rely is free from ambiguity in that respect, the fact alone that the defendant or the General Electric Company, or both, at one time entertained a mistaken view, can afford no proper aid to construction, if the familiar rule that that which is free from uncertainty must be construed according to its plain meaning and intent is to be adhered to. Obviously a different view would lead to the making of a new or additional agreement between the parties. Nothing, apparently, precludes the General Electric Company from recovering its payment to the defendant made in ignorance of the fact of his transfer of the stock, if by such transfer he forfeited his right to the payment; and, if he is liable to refund the money received to the General Electric Company, it cannot be said that the money belongs, ex æquo et bono, to the plaintiff or his assignors. If, on the other hand, the General Electric Company concedes its liability to the defendant, and acquiesces in his retention of the sum paid, notwithstanding his transfer of the stock, still no equity of the plaintiff's assignors is apparent if the transfer of the stock did not, as a mere incident thereto, carry with it the consideration received by the defendant upon the prior sale of his right to participate in the distribution of the assets of the Northwest Electric Company above $65 per share. Patrick v. Metcalf, 37 N. Y. 332; Butterworth v. Gould, 41 N. Y. 450.

The present motion for a new trial is predicated, first, of a renewal of the claim made upon the trial that the right to the proceeds of the guaranty passed to the plaintiff's assignors, as an incident to the transfer of the stock, but, if not, that the evidence, at least prima facie, presented an expressed assignment of the guaranty or its proceeds; and, in the discussion of the points urged in support of the motion, I am not unmindful that after its breach any right of action upon the guaranty was assignable. No breach of the guaranty, however, at any time appeared and I must therefore conclude that the assignment urged has reference to the guaranty itself, and not to any right of action incident to its breach; hence, if the guaranty was personal to the defendant, and not assignable by him, it must necessarily follow that neither as an incident to the transfer of the stock, nor by express assignment, did the plaintiff or his assignors acquire any right, legal or equitable, to the proceeds of the guaranty subsequently paid to the defendant. I attach no importance to the point that the receipt of the money by the defendant to the use of the plaintiff's assignors appears from the former's admission, when called upon by the General Electric Company to refund the

sum paid, that he would retain it for the benefit of his transferees, since he was not thereby absolved from liability to the General Electric Company for its payment to him in ignorance of his transfer of the stock, if his right to the sum paid was dependent upon his continued ownership of the stock; nor could such admission, alone, subject him to liability to the plaintiff or his assignors, if, because of the personal character of the guaranty, he only was entitled to payment thereunder. Any inference from the admission alone is refuted by the other facts in evidence; and assuredly an admission, merely, made by the defendant in ignorance of his actual rights and liability to the General Electric Company, would not suffice for any equitable claim upon the part of the plaintiff or his assignors to the sum paid and retained by the defendant.

The facts, in brief, are these:

On October 18, 1893, the Northwest General Electric Company of Minnesota, being insolvent, entered into an agreement with the General Electric Company of New York, a creditor (such agreement being the one alluded to in the agreement next set out in full) whereby, among other things, the latter company, in consideration of the adjustment of certain accounts and the transfer of assets to it, assumed to institute and prosecute proceedings aimed to dissolve the former company, and to distribute its assets among the shareholders thereof. Thereupon the General Electric Company entered into further agreement with certain of the preferred stockholders of the Northwest General Electric Company,—among them, the defendant,—of which the following is a copy:

"This agreement between the General Electric Company, a corporation under the laws of the state of New York, and such of the preferred shareholders of the Northwest General Electric Company, a corporation under the laws of the state of Minnesota, as may assent and agree thereto, witnesseth, that whereas, the Northwest General Electric Company is financially embarrassed, and the General Electric Company is its largest creditor, and desires to make with it the agreement, a copy of which is hereto annexed, and for that purpose it is desirable that the holders of preferred stock in the Northwest General Electric Company shall assent to the execution of that agreement: Now, therefore, in consideration of the execution of said agreement by the Northwest General Electric Company, the General Electric Company hereby agrees to and with each of the preferred stockholders of the Northwest General Electric Company who may assent to this agreement that if, upon the liquidation of the affairs of the Northwest General Electric Company as provided in said agreement, or in such other manner as may be agreed upon between said two companies, the shareholders of the Northwest General Electric Company shall not receive sixty-five dollars ($65) per share, it will pay to such preferred shareholders as may assent to this agreement, and agree to account to the General Electric Company for all surplus which they may receive in said liquidation above sixty-five dollars ($65) per share, a sum sufficient to give such preferred shareholders sixty-five dollars ($65) upon each of their shares: provided, however, that the General Electric Company shall not be required in any event to thus pay to said preferred shareholders more than ten dollars ($10) per share upon their stock. The affairs of the said Northwest General Electric Company 'are to be liquidated in the manner set forth in said agreement, or in such other manner as may be agreed upon by the said two companies, as speedily as the same can be done without unduly sacrificing the assets, to the end that the said sixty-five dollars ($65) per share may be realized by the said preferred shareholders within the shortest time practicable; and if, after the lapse of twenty-four months, a majority in value of the said preferred shareholders who shall

have assented to this agreement shall request, the assets of the company not then disposed of shall be sold at public auction and its affairs wound up without further delay. The several preferred shareholders signing this instrument do hereby agree to account to the General Electric Company for all surplus which they may receive in said liquidation above sixty-five dollars ($65) per share upon their respective holdings, and hereby authorize said Northwest Company, as soon as it shall have received and paid to such shareholders sixty-five dollars ($65) per share thereon, to pay directly to said General Company all excess above that amount, to which they may be or become entitled on said shares from the Northwest Company.

"In witness whereof, the General Electric Company hath set its corporate name and seal, and the preferred snareholders of the Northwest General Electric Company, who assent and agree to the terms of this agreement, have set their respective names, adopting for the purpose a common seal, this 8th day of November, A. D., 1893.

"General Electric Company,
　　　　　"By C. A. Coffin, President."

Before distribution of the assets of the Northwest Company, the defendant transferred his stock to Lee, Higginson & Co., plaintiff's assignors, "subject to" this agreement; and, the distribution having resulted in a dividend of less than $55 per share, the defendant received an amount equal to $10 per share from the General Electric Company, to a recovery of which sum the plaintiff claims to be entitled.

As I have stated above, there seems to be but little force in the contention that the transaction between the defendant and Lee, Higginson & Co. was effective as an assignment of the General Electric Company's promise to pay this sum of $10 upon each share; but, assuming that there was an intended assignment, the dismissal of the complaint was still inevitable, as pointed out, if the guaranty was personal, and, because of its personal character, nonassignable. The agreement which has been set forth above clearly contemplates a personal promise upon the defendant's part to pay over to the General Electric Company his share in the expected distribution, so far as excessive of $65. The obligation to make payment of this excess was personal to him, and it was in consideration of his promise that the General Electric Company undertook to pay him the amount of a possible deficit to the extent of $10 per share. Without an acceptance by the company of an assignee's substitution for the defendant upon the promise, consideration for the company's agreement to pay the $10 per share failed with the defendant's act in transferring his stock, and with his consequent inability to participate in the distribution. Having agreed to make the payment of this sum to the defendant upon his promise to perform an act which presupposed his continued ownership of his stock, the General Electric Company looked to the defendant alone, as a stockholder, and its promise to him could not pass by assignment from him to another, coupled with the transfer of the stock. The principles which apply to this case are found in many adjudications. Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep. 204; Friedlander v. Insurance Co., 38 App. Div. 146, 56 N. Y. Supp. 583; Bridge Corp. v. Abbott, 4 Cush. 473.

It is contended that the agreement between the General Electric Company and the defendant could be viewed as embodying an offer to all holders of stock, and that any holder, at whatever time, who "assented" to its terms, might become a party thereto, although not one

of the original signers. Upon this theory it is claimed that the promise of the General Electric Company inured to the benefit of Lee, Higginson & Co., who became stockholders through Grossman, and who "assented" to the agreement by taking the stock "subject" to it. The difficulty with this contention is that any possible doubt as to the meaning of the word "assent," when used in this agreement, is set at rest by the attestation clause, which expressly identifies the persons who "assent" with the shareholders whose signatures are affixed, and the agreement was made with Grossman, the shareholder, not with his assignees of the shares. The motion for a new trial must be denied.

Motion denied.