LYON *v.* VAN RADEN.

1. LETTER OF CREDIT—SPECIAL CREDIT.

At the request of A. that defendants recommend him to a bank, to enable him to get advances, so that he might hold eggs purchased until the price should advance, defendants wrote to the bank, stating the facts, and that they did not think there was any risk in his so holding them; adding that they guaranteed the payment of drafts drawn by A. on them, as they had done in the past, and that the risk incurred by the bank amounted to next to nothing. *Held,* that this was a letter of special, and not of general, credit.

2. SAME—ASSIGNABILITY.

Where a letter of special credit was written to a banking corporation to induce it to make advances to a certain person on produce purchased by him, on the bank's going out of business, and being succeeded by a banking copartnership, such successor could not rely on the letter of credit, and recover from the writers for advances made thereon.

Error to Calhoun; Smith, J. Submitted January 10, 1901. Decided April 16, 1901.

*Assumpsit* by Lottie L. Lyon, individually and as administratrix of the estate of Thomas Lyon, deceased, and John W. Breakey, copartners as the Homer Banking Company, against T. Van Raden and H. D. Wheeler, copartners as Van Raden & Wheeler, for money paid to defendants' use. From a judgment for plaintiffs on verdict directed by the court, defendants bring error. Reversed.

*Myron H. Nichols (John E. Foley,* of counsel), for appellants.

*Herbert E. Winsor (William H. Porter,* of counsel), for appellees.

HOOKER, J. The plaintiffs are a copartnership, which

in October, 1897, succeeded in the banking business the First State Bank of Homer, a corporation organized under the State banking law, which theretofore did business in the village of Homer. Thomas Aicken was a local dealer in eggs, butter, etc., whose habit was to buy these products from the farmers and ship them to New York for the defendants, putting into the First State Bank of Homer a draft upon them for the amount of his bill, with bill of lading attached. The bank would allow him to draw against this credit, and would collect the draft. The business was thus done, or at least continued, by the First State Bank in pursuance of a letter written by the defendants, reading as follows, viz.:

"NEW YORK, April 13, 1897.
"1st STATE BANK OF HOMER,
          "Homer, Mich.
"*Gents:* We are in receipt of a letter from Thomas Aicken in which he requests us to write you in regards to allowing him to draw some money from you for the purpose of holding eggs in his cellar. We do not think there is any risk at all in his holding 5 or 600 cases of eggs in his cellar, especially when they can be bought at such a low figure as he can buy them at the present time. We, of course, guarantee the payment of drafts drawn by Mr. Aicken upon us, as we always have done in the past; and any favors which you may show him we feel positive will be appreciated by him, and that the risk you take by advancing him money amounts next to nothing.
   "We are, yours respectfully,
          "VAN RADEN & WHEELER."

This letter came to the possession of the plaintiffs, with other effects of the First State Bank. It was written at the request of Aicken that the defendants recommend him in some way to the First State Bank, to enable him to get advances from the bank, so that he might hold eggs purchased, in his cellar, until the market should advance. On December 16, 1897, Aicken shipped a quantity of produce from Homer to defendants, and at the same time drew a draft against them for $1,900, with bill of lading attached, and delivered the same to the plaintiffs, who

gave him credit for that sum. The draft was returned by plaintiffs' correspondent, being reported, "Payment refused." The amount was then charged against Aicken on plaintiffs' books.

On June 21, 1898, this action was commenced by declaration. After appearance an amended declaration was filed, containing a special count upon a bill of exchange and acceptance, and the common counts in *assumpsit*. The general issue was pleaded, and upon the trial the court directed a verdict for the plaintiffs.

The important question in the case arises from plaintiffs' claim that they had a right to rely upon the letter written by the defendants as a letter of credit, it being insisted:

1. That, as successors of the First State Bank, they are entitled to rely upon the promise made to the bank in the letter.

2. That the letter should be held a general letter of credit, good in favor of any one who should pay or buy drafts made by Aicken upon defendants in reliance upon it, and an acceptance of drafts drawn.

We are of the opinion that this cannot be called a general letter of credit: *First*. The circumstances under which it was given do not indicate that such a letter of credit was within the contemplation of the parties, as all go to show that it was solicited and given to enable Aicken to obtain advances from the First State Bank, and no one else. *Second*. The letter states the object for which it was asked, viz., to induce the bank to allow Aicken to draw some money from the bank for the purpose of holding eggs in his cellar. In the same connection they said they would guarantee the payment of drafts drawn by Aicken upon them, as they always had done in the past. It appears to be conceded that, in a doubtful case, the intent of the parties is to be determined, for the purpose of ascertaining whether the instrument is a general or special letter of credit. We think the letter is not ambiguous, but if it were so the intent seems apparent. Hence there is no occasion for a discussion of the authorities ap-

plicable to letters of doubtful character.   We must hold it to be a special letter of credit.

This being so, the case must turn upon the right of the plaintiffs to assert that this contract was made with them. While the larger interest of both concerns belonged to the same persons, first as stockholders in the State Bank, and afterwards as copartners, the concerns were different persons in the law.   The record does not disclose how the bank transferred its assets to the copartnership, and it makes little difference how it was done.   The corporation went out of existence, and with it all its rights which were not assignable.   The defendants had made a contract of guaranty, upon which the bank was authorized to rely and act; but the contract was personal.   It could not, by delivering the letter to another, create any such contract rights between such other and the defendants.

We think it was material for the defendants to show fraud on the part of the plaintiffs in accepting and sending the draft contrary to the direction of Aicken, if such proof was offered.

It is unnecessary to discuss other questions.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.