## BANK OF BUCHANAN COUNTY v. CONTINENTAL NAT. BANK OF LOS ANGELES.

(Circuit Court of Appeals, Eighth Circuit. December 5, 1921.)

No. 5551.

1. **Guaranty ⬤⟹30—Limited to person to whom addressed.**

   A guaranty addressed to a particular person is a contract limited to the person addressed.

2. **Guaranty ⬤⟹30—Guarantor held not bound by a guaranty transferred by the addressee to another.**

   Defendant bank telegraphed to another bank a guaranty of drafts drawn on a commission house covering cars of produce to be shipped under certain conditions. The addressee, having no business relations with the shipper, turned the telegram over to plaintiff bank, which had, and which cashed the drafts, though they did not comply in all respects with the conditions. *Held* that, the guaranty not having been accepted and acted on by the addressee, defendant was not liable thereon.

3. **Guaranty ⬤⟹6—Guarantor not bound to accept or reject proposed modification.**

   Notice by the addressee of a telegram of guaranty to the guarantor that it would not act thereon, but had turned the telegram over to another, *held* in effect a new offer which the guarantor was not called on to either accept or reject, and its failure to answer *held* not an acceptance of the substitution.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by the Continental National Bank of Los Angeles against the Bank of Buchanan County. Judgment for plaintiff, and defendant brings error. Reversed.

Charles H. Mayer, of St. Joseph, Mo. (Charles F. Strop, of St. Joseph, Mo., on the brief), for plaintiff in error.

R. E. Culver and Benjamin Phillip, both of St. Joseph, Mo., for defendant in error.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This was an action upon a written guaranty. At the close of the evidence both parties requested a directed verdict. The court directed a verdict in favor of the plaintiff, and from the judgment this error proceeding is prosecuted. The J. L. Price Brokerage Company were engaged in business at St. Joseph, Mo., as commission merchants. Hicks, Sutherland & Co. were engaged in a similar business at Los Angeles, Cal. The St. Joseph company had made some prior purchases from the Los Angeles company, but, contemplating further purchases, it procured the defendant, hereafter called St. Joseph Bank, to send to the Los Angeles Trust & Savings Bank a telegram reading as follows:

"St. Joseph, Mo. 9 31 A June 8, 1917.

"Los Angeles Trust and Savings Bank, Los Angeles, Calif. We guarantee J. L. Price Brokerage Co. will pay draft drawn by Hicks Sutherland Co.

when accompanied with certificate of weights and original bill of lading
covering five cars new potatoes sacked draft to be drawn on basis three
twenty five cwt. for what the car contains and decking charge ten dollars
per car.                                   Bank of Buchanan Co."

Upon receipt of the telegram the addressee ascertained that Hicks,
Sutherland & Co. were not among its regular customers, but transacted
their business with the plaintiff, the Continental National Bank of Los
Angeles. The addressee advised the plaintiff of the contents of the
telegram, and on the same day, June 8th, the Los Angeles Trust &
Savings Bank mailed a letter to the St. Joseph Bank acknowledging re-
ceipt of the telegram and advising that the Hicks-Sutherland Company
was not a client of that bank, but had given the writer the name of
their Los Angeles bankers. The letter then continued:

"We called up the Continental National Bank and explained the situation
and they stated it would be agreeable to them to negotiate drafts as outlined
in your telegram, and requested that we send them your telegram, which
request we are pleased to grant. Trusting there will be no objection to
the manner in which we have disposed of the matter, and that you appre-
ciate our position, we are,

"Yours truly,                        Ralph Day, Assistant Cashier."

About four days are ordinarily required for a letter mailed at Los
Angeles to reach a St. Joseph addressee. The St. Joseph Bank received
this letter, but made no reply. Between June 14th and June 19th
Hicks, Sutherland & Co. loaded and shipped five carloads of new pota-
toes, consigned to the J. L. Price Brokerage Company on straight bills
of lading. At the same dates Hicks, Sutherland & Co. drew five drafts,
each addressed to J. L. Price Brokerage Company and signed by Hicks,
Sutherland & Co. and payable on demand to the order of the Conti-
nental National Bank of Los Angeles for amounts stated. The orig-
inals of the bills of lading were attached to these drafts with invoices
showing the car, the date of shipment, the consignor, the weight and
value of the potatoes, and the charge for decking. These drafts were
delivered to the Continental National Bank, which paid Hicks, Suther-
land & Co. the amount of the face of the drafts and then sent them with
the attached papers to the St. Joseph Bank. No certificates of weights
were attached or sent with the drafts. On June 25th or 26th an attor-
ney for the Continental National Bank was informed at a meeting with
officers of the St. Joseph Bank and of the J. L. Price Brokerage Com-
pany that payment of the drafts was refused, because the guaranty was
not addressed to the Continental National Bank, and because no cer-
tificates of weights were attached to the drafts and bills of lading. The
cars had arrived at St. Joseph at dates between June 21st and 25th, and
the potatoes had been sold by the railway company on dates from June
22d to June 27th, for freight and demurrage charges and as perishable
goods. The attorney for the Continental National Bank on June 26th
requested his client to procure the certificates of weight and upon
obtaining them he exhibited them to the St. Joseph Bank on July 9th
and again demanded payment of the drafts which was refused.

[1] "Every one has a right to select and determine with whom he
will contract, and cannot have another person thrust upon him without
his consent. In the familiar phrase of Lord Denman, 'You have the

right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.'" Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 387, 8 Sup. Ct. 1308, 32 L. Ed. 246. Was this telegram a special guaranty intended only for the addressee or was it a general guaranty which could be accepted by other banks? The rule has often been stated that a guaranty which is addressed to a particular person is a contract limited to the person addressed. Myers v. Edge, 7 Term 254, 256; Strange v. Lee, 3 East 484, 490; Dry v. Davy, 10 A. & E. 30, 31; Grant v. Naylor, 4 Cranch (U. S.) 224, 235, 2 L. Ed. 603; Robbins v. Bingham, 4 Johns. (N. Y.) 476, 477; Walsh v. Bailie, 10 Johns. (N. Y.) 180, 182; Penoyer v. Watson, 16 Johns. (N. Y.) 100, 101; Evansville Bank v. Kaufmann, 93 N. Y. 273, 288, 45 Am. Rep. 204; Birckhead v. Brown, 5 Hill (N. Y.) 634, 643, Id., 2 Denio, 375; Smith v. Montgomery, 3 Tex. 199, 208; Allison v. Rutledge, 5 Yerg. (Tenn.) 193, 194; Johnson v. Brown, 51 Ga. 498, 500; King v. Batterson, 13 R. I. 117, 119, 43 Am. Rep. 13; Holmes v. Small, 157 Mass. 221, 224, 32 N. E. 3; Jordan-Marsh Co. v. Beals, 201 Mass. 163, 164, 87 N. E. 471; Lyon v. Van Raden, 126 Mich. 259, 262, 85 N. W. 727; Morris & Co. v. Lucker, 158 Mich. 518, 520, 123 N. W. 21; Schoonover v. Osborne, 108 Iowa, 453, 458, 79 N. W. 263; Black v. Albery, 89 Ohio St. 240, 245, 106 N. E. 38; Lyon & Co. v. Plum, 75 N. J. Law, 883, 884, 69 Atl. 209, 14 L. R. A. (N. S.) 1231, 15 Ann. Cas. 1019, 127 Am. St. Rep. 858; Saunders v. Ducker, 116 Md. 474, 479, 82 Atl. 154, Ann. Cas. 1913C, 817; 2 Dan. Neg. Inst. § 1774.

The most common application of the principle in the cases cited is to guaranties addressed to one individual and acted upon by another and to guaranties addressed to one firm which has been succeeded by another organization, or in which some change has occurred by addition or withdrawal from the membership and the claim was made that the guaranty extended to the later firm or company. In the case of Grant v. Naylor, supra, the Supreme Court of the United States by Chief Justice Marshall held that a letter of credit carried by the writer's son to England and addressed by mistake of the writer to "Messrs. John & Joseph Naylor & Co.," guarantying the engagements of a firm in which the writer's son was a partner, did not bind the writer to pay for goods sold by a firm engaged in business at Wakefield, England, under the name of John & Jeremiah Naylor & Co., although the sale was made upon the faith of the letter of credit, and there was no commercial house at Wakefield of the name of John & Joseph Naylor & Co., and the letter was really designed for John and Jeremiah Naylor, because the letter was not ambiguous and was not addressed to the firm that acted upon it. It is to be observed that in most of the cases cited the intention of the guarantor to confine his engagement to the person named is shown not only by the formal address or superscription at the beginning of the writing, but is also shown by the use of some pronoun in the body of the guaranty in phrases such as "if you will furnish" or "which you may supply." While such definiteness affords a facile means of interpretation of the contract, it is not lightly to be inferred that a guaranty is to be taken as general because it is

addressed to one person in the superscription only. The guarantor may have selected the particular addressee as the only person whom he would trust to deal with his principal, for the reasons stated by Lord Kenyon in Meyers v. Edge, supra, that the guarantor thought that that dealer would use due diligence in enforcing payment from the principal regularly, as goods were sold him, and that at least, the courts cannot say that the guarantor would have given the same credit to some other person than the one he did select. Others of the cases cited say that the guarantor has the right to select the person whom he trusts to supply his principal with funds or goods, because he may have confidence in his prudence in dealing with his principal or in his lenience with the guarantor if the principal makes default and so the character of the addressee selected is a material ingredient in the engagement. There are many obvious reasons why a bank may select a particular bank correspondent as one whom it will guaranty in a case like this. There may be such a relation of credits between them that, if called upon to pay the guaranty, the guarantor may offset the claim by mere entry of credit; there may be such common business interests between the banks that there is a mutual advantage anticipated from the transaction; the guarantor may have confidence in the bank which it guaranteed, derived from previous dealings, from personal friendships between the banks' officers, or from knowledge of the reputation and standing of the correspondent so that it believes the correspondent will take unusual care not to purchase the drafts unless it is satisfied with the solvency and willingness to pay of the drawee, and that it will take unusual care to first exact payment from the drawee before it calls upon the guarantor to pay.

[2] In this case, although the guaranty was that the Price Brokerage Company would pay the drafts when they were accompanied by certificates of weights and the bills of lading, the drafts were presented to the St. Joseph Bank without any such certificates, and before the certificates were obtained the produce had been sold by the railway company, as a perishable product and to pay the charges of carriage. The St. Joseph Bank was threatened with possible suit, when it might have been willing to have paid the drafts had the certificates accompanied the drafts. It may have selected the other Los Angeles bank as its addressee, because it believed it would attend to such details in a proper business manner. When the St. Joseph Bank sent the telegram of guaranty, it was making an obligation which was only collateral to the obligation of the J. L. Price Brokerage Company, the drawee of the drafts, and which bound it to pay only in case the drawee should fail to pay. Before such a guarantor can be held, the holder of the drafts must use reasonable diligence to make demand upon the drawee and to give notice of the nonpayment to the guarantor. Douglass v. Reynolds, 7 Pet. 113, 126, 127, 8 L. Ed. 626; Davis v. Wells, 104 U. S. 159, 160, 170, 26 L. Ed. 686; Johnson v. Charles D. Norton Co., 159 Fed. 361, 364, 86 C. C. A. 361; 2 Dan. Neg. Inst. § 1787.

The St. Joseph Bank may have selected the addressee in its telegram, because it believed that that correspondent would use greater diligence to have the holder present the drafts to the J. L. Price Brokerage

Company and in notifying the guarantor of default than another bank would exert and thereby would give the guarantor an earlier opportunity to save itself from loss, before the markets for produce should materially change, before the produce should deteriorate, and before the drawee's financial condition should change for the worse. The reasons for maintaining the right of selection of the person with whom one will contract are illustrated by those suppositions, but the right of selection in any case does not depend upon proof of the existence of a good reason therefor, for one may refuse to contract with another for a good reason or for no reason. Equitable Life Assur. Soc. v. McElroy, 83 Fed. 631, 641, 28 C. C. A. 365; Boston Ice Co. v. Potter, 123 Mass. 28, 31, 25 Am. Rep. 9.

From these considerations it is manifest that the court cannot say that the bank which the guarantor selected is not the only one which it intended to select. The meaning of the guaranty is apparent and limited by its terms to the addressee. If it had been the intention to guaranty the drawer's drafts to any indorsee, a telegram to the drawer and addressed to no particular indorsee would have been the usual method of granting such credit. There were no words in the guaranty indicating that it was intended for any other bank's protection. The few cases which bear upon this exact question support the view which has been announced. In Taylor v. Wetmore, 10 Ohio, 491, 494, the guaranty was addressed at the beginning to "Messrs. A. D. McBride & Co.," and the argument was made that because the body of the guaranty did not say that the guarantors "will be responsible to you" it was therefore a letter of credit to any one who would advance the goods. The court said:

"It seems to us this reasoning is more ingenious than sound. The guaranty being addressed to A. D. McBride & Co., it is to them the defendants speak when they say, 'We will be responsible to the amount of $2,000;' and it contains no general terms by which either Farrar or the house of McBride had the authority to transfer it to the plaintiffs, and they to make the defendants their guarantors, without their assent, express or implied."

In Fletcher v. Burnside, 142 Ga. 803, 83 S. E. 935, a guarantor was held not liable to F. for goods sold to C. because he had written a letter to K. asking him to furnish goods to C. and promising to pay for them, although in pursuance of the letter K. induced F. to sell the goods to C., and the guarantor knew that F. had sold C. the goods in pursuance of his letter to K.

[3]. The defendant in error asserts that the failure of the St. Joseph Bank to reply to the letter of the Los Angeles Trust & Savings Bank, wherein it advised that it had explained the situation to the Continental National Bank and the latter bank had stated that it would be agreeable to them to negotiate drafts as outlined in the telegram, was an acceptance of the Continental National Bank as the one guaranteed, by acquiescence of the St. Joseph Bank, and a practical construction placed on the guaranty, as if it had been addressed to the Continental National Bank. There is no doubt that parties by their acts and conduct may give a practical interpretation to doubtful portions of a contract of guaranty. In Bleeker v. Hyde, 3 McLean, 279, 280, Fed. Cas. No.

1,537, a letter was addressed to C. & Co. authorizing a firm to purchase goods in the name and on the account of the guarantor. Goods were sold by another than C. & Co. In the invoices the goods were charged to the guarantor, and he saw and approved of these invoices and also took the remaining goods into his possession, on the ground that he was bound to pay for them. This was held sufficient to show that he approved of the purchases and was bound to pay for them. In Edmonston v. Drake, 5 Pet. 624, 635, 8 L. Ed. 251, E. wrote a letter of credit to C. & B. guarantying contracts of R. C. & B. were unable to undertake the business and introduced R. to D. & M., showing the letter of credit. D. & M. dealt with R. on the faith of the letter. D. & M. then informed the guarantor that by virtue of his letter of credit to C. & B. they had dealt with R., and asked repayment for funds advanced. To this E. replied by letter sanctioning the advances D. & M. had made to R., and this was held to make E. responsible. But in the present case there was no affirmation by word or acts of acceptance by the St. Joseph Bank of the Continental National Bank as the one guaranteed. There was mere delay and silence when the letter of notification was received from the Los Angeles Trust & Savings Bank. The effect of the telegram by the St. Joseph Bank was an offer of guaranty to the Los Angeles Trust & Savings Bank. If the letter of the addressee in reply can be treated as the act of the Continental National Bank by its agent, it was a counter proposal by which it, instead of the original addressee, offered to cash the drafts. This proposal of new conditions, not in the original offer, was a rejection and refusal of the St. Joseph Bank's offer (National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822; Sloan v. Wolf Co., 124 Fed. 196, 198, 59 C. C. A. 612; Rushing v. Manhattan Life Ins. Co. of New York, 224 Fed. 74, 78, 139 C. C. A. 520; Doyle v. Hamilton Fish Corp., 234 Fed. 47, 50, 148 C. C. A. 63; 13 Corp. Jur. 281) and the making of a new offer to the St. Joseph Bank. Delay and failure to answer a proposal does not make a contract. No notice of acceptance of this counter proposal was ever given and an acceptance of such an offer, if not communicated to the proposer, does not make a contract. National Bank v. Hall, 101 U. S. 43, 48, 25 L. Ed. 822; Equitable Life Assur. Soc. v. McElroy, 83 Fed. 631, 642, 28 C. C. A. 365; Paine v. Pac. Mut. Life Ins. Co., 51 Fed. 689, 693, 2 C. C. A. 459. Nor was the silence of the St. Joseph Bank an acceptance of the counter offer, for silence cannot be taken as assent to an offer unless there was both the opportunity and the duty to speak. One to whom an offer is made is under no obligation to do or say anything concerning an offer which he does not accept. More v. New York Bowery Fire Ins. Co., 130 N. Y. 537, 547, 29 N. E. 757; Titcomb v. United States, 14 Ct. Cl. 263, 267; Prescott v. Jones, 69 N. H. 305, 306, 41 Atl. 352; Felthouse v. Bindley, 11 C. B. N. S. 869, 875; Baltimore & L. Ry. Co. v. Steel Rail Supply Co., 123 Fed. 655, 659, 59 C. C. A. 419; 13 Corp. Jur. 276; Anson on Contracts, p. 15; 1 Williston on Cont. § 91.

It was not the duty of the St. Joseph Bank to warn the Continental National Bank not to purchase drafts relying on its telegram, but it was the duty of the Continental Bank to await an acceptance of the

offer it had made before relying upon the guaranty as made for its benefit. It is unnecessary to consider other questions presented. The court should have instructed the jury to return a verdict in favor of the defendant.

The judgment will be reversed, and a new trial ordered.