# THE AMERICAN CREDIT INDEMNITY COMPANY
## *v.* JAMES D. CASSARD.

*Construction of Bond Indemnifying a Partnership Selling Goods Against Losses from Insolvency of Buyers—Death of One Partner—Discontinuance of Business.*

Defendant agreed to indemnify a firm composed of N. and C., as sellers of goods, against losses arising from the insolvency of their commercial debtors, under a contract or bond which provided that "in the event of failure of or discontinuance of business by the indemnified, this bond shall become null and void." After goods were sold by N. and C., the former died, and certain parties to whom they were sold subsequently became insolvent during the continuance of the bond of indemnity. *Held*, that the death of one member of the firm was not a discontinuance of business within the terms of the bond, and that the surviving partner was entitled to recover for the losses so incurred.

Appeal from the Superior Court of Baltimore City. That Court (RITCHIE, J.), instructed the jury that by the true construction of the bond sued on the plaintiff was entitled to recover, and the jury returned a verdict for the plaintiff for $2,435.68.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*D. K. Este Fisher* (with whom were *Wm. A. Fisher* and *W. Cabell Bruce* on the brief), for the appellant.

It requires but small experience in business to acquire the knowledge that the indebtedness due to any commercial house is vastly more easily collected while the business is being conducted, as a going concern, than it is when the business is to be wound up, whether from death, insolvency or from other sources. The debtor of a commercial house expects future favors from it, and pays his bills to it in the expectation of new purchases to be made. But when he

realizes that no further credits are to be procured, one strong motive for the avoiding of failure in meeting his obligations has been removed. Hence it was that it was stipulated by the 8th condition that so soon as there should be either a failure in business by the assured, or a discontinuance of business by him, from whatever cause, the bond should be at once void. It could no longer have any force for any purpose. Although sales may have been previously made, no claim for a loss could be proven. This is also apparent from the stipulation in the 9th condition. It may be suggested that this is a harsh construction. Even if it were, such is the plain import of the words of the contracting parties, to which due effect must be given. But it is not a harsh provision, in view of the considerations which have been stated. If the business of Naylor & Co. had not come to an end, as the result of Mr. Naylor's death, is it not quite possible that the obligations of the debtors would have been complied with ? The language of the 8th clause is as broad as it would be possible to use. In the event of the discontinuance of the business, the bond was to become a nullity. No rights could any longer be claimed under it. The bond in suit did become void on the 3d of October, 1893, the date of the death of Mr. Naylor, while the losses did not occur until the months of November and December following.

*Joseph C. France*, for the appellee.

The appellee respectfully submits : That "the indemnified" was the firm of J. F. Naylor & Co., and the death of Mr. Naylor did not as a matter of law work a "discontinuance of business by the indemnified." "*Discontinuance*" implies a voluntary action, and it is associated in the clause in question with the word "failure." While the death of a partner may throw the firm indemnified into liquidation, it cannot be said that there has therefore been a discontinuance of the business *by the indemnified*. The agreed statement of facts admits that the appellee's failure to collect from the

insolvent debtors was without fault on his part, and there is no contention by the appellant that in point of fact the business of J. F. Naylor & Co. was " discontinued " or changed by the death of Naylor in any way other than by the ordinary legal effect of the death of one partner upon the firm of which he was a member.

It can make no difference that the bond covered only the sales of the " hosiery department " of J. F. Naylor & Co., and that Naylor was, as between him and his partner, entitled to all the profits, and responsible for the losses of this department.   The bond was issued to the *firm ;* it acknowledges a receipt of premium from the firm ; all contracts of the special department were in the name of the *firm*, and the firm was as much responsible for the debts of the hosiery department as for any of its other obligations.

The appellée's contention would be just as strong if Naylor had been the sole member of the firm.   If the appellant really intended its policy to bear the construction now contended for, it was laying a trap for the unwary merchant. It would have been an easy matter to have stated specifically in the contract that the death of the indemnified, if an individual, or the death of any partner, if a firm, should render the policy null and void.   The language used, however, is " discontinuance of business *by* the indemnified," and this clearly means an act done by the indemnified in his *lifetime.*

There is no reason in the construction contended for by the appellant.   The death of the indemnified, if an individual, and *a fortiori*, the death of one of the several members of a firm, does not add to the risk assumed.   If such death necessitates a liquidation it puts an end to sales which might result in losses covered by the bond ; the fewer the sales, the less the risk under the bond, because there is provision for a substantial initial loss which must first be borne by the indemnified before the bond can be called upon to pay.

McSHERRY, C. J., delivered the opinion of the Court.

The American Credit-Indemnity Company is a corporation created under the laws of the State of Louisiana. Its business consists in guaranteeing or indemnifying vendors of goods, wares and merchandise against losses resulting to them from the insolvency of their commercial or mercantile debtors. It issues for a money consideration a bond of indemnity which, together with the conditions and terms written or printed upon it, constitutes the contract between the company and the indemnified creditor. Among these conditions it is provided by the eighth clause that " in the event of failure of, or discontinuance of business by the indemnified, this bond shall become null and void."

The firm of J. F. Naylor & Company, composed of John F. Naylor and James D. Cassard, located and carrying on business in Baltimore City, purchased from the Credit-Indemnity Company one of these bonds of indemnity. It bears date on the first day of October, eighteen hundred and ninety-two, and covers losses between that date and the thirty-first day of December, eighteen hundred and ninety-three, not exceeding in the aggregate the sum of five thousand dollars over and above a designated initial loss first to be borne by the creditors. Amongst the branches of business conducted by the firm was a knit-goods and hosiery department, and the bond of indemnity held by Naylor & Company related only to sales of this class of merchandise. Mr. Naylor had exclusive charge of this branch of the firm's affairs, and as between himself and his partner, he derived all the profit therefrom and bore all the losses therein, though as to third parties there was no difference between this and other departments of the business. The Indemnity Company has been duly credited with the initial loss of fifteen hundred dollars with which the firm was chargeable under the bond, and the question before us on this appeal is whether the company is liable, in view of the circumstances to be stated presently, for the loss sustained by Naylor & Company over and above the sum of fifteen

hundred dollars.    The Court below ruled that the Indemnity Company was liable and from the judgment rendered against it the pending appeal was taken.

Hess, Herle & Company, one of the customers of Naylor & Company, purchased from the latter hosiery and knit goods to the value of two thousand, seven hundred and ninety-two dollars and thirteen cents.    These purchases were made at various dates between February the sixth and August the eighteenth, in the year eighteen hundred and ninety-three.    On November the ninth, of the same year, Hess, Herle & Company failed within the meaning of the term failure as used in the bond of indemnity.    H. E. Patrick & Company, another customer of Naylor & Company, purchased from the latter other goods to the value of one hundred and fifty-nine dollars and fifteen cents, and these were shipped to the vendee in March and July, eighteen hundred and ninety-three.    On December the twenty-seventh, of the same year, Patrick & Company failed..    In August, eighteen hundred and ninety-three, Mr. Naylor fell sick, and of that illness he died on October the third following.    All of the goods purchased by the two debtor firms just named were shipped to them before the death of Mr. Naylor, and each of the firms failed and became insolvent after his decease.    It was admitted that the surviving partner, who instituted the pending suit, furnished the proof of these losses to the Indemnity Company ; and that without fault on his part he has received nothing from either of the insolvent firms.

Now, it is insisted that the death of Mr. Naylor dissolved the firm of Naylor & Company on October the third, eighteen hundred and ninety-three—the date of his decease— and that this dissolution thus brought about was a " discontinuance of business by the indemnified," which under the eighth condition of the bond caused the bond to " become null and void."    Whether this contention is correct and well founded is the single question in the case.

Contracts of this character, like policies of fire insurance,

to which they are closely analogous, must receive a reasonable construction so as to give effect to the intention of the parties thereto, and so as to carry out rather than defeat the purposes for which they were executed. They should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design ; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability fairly within the scope or spirit of their terms. It is difficult to suggest a satisfactory reason for holding that the death of one member of a creditor firm long after goods have been sold and delivered, releases the obligor company from its liability to make good the loss arising from a subsequent insolvency of the debtor during the continuance of the bond, that would not equally apply to the case of an individual creditor who was not a member of any firm. The object of this peculiar kind of indemnity is to guarantee vendors against loss by reason of the insolvency of their debtors ; and if the debt has been contracted during the continuance of the bond of indemnity and whilst the firm or the individual protected by the bond is actually engaged in business, though the loss happens after the death of one member of the creditor firm or after the death of the individual creditor when there is no firm, the contingency contracted against—the insolvency of the debtor—is precisely the same as though the death of the creditor had not occurred at all. If in the case of an individual creditor who is indemnified by such a bond and who after selling his goods dies, it be held that the bond is made void because of his death, there would be superadded by construction a provision of avoidance beyond the two designated in the eighth clause. The failure of the person indemnified and his discontinuance of business are specified—his death is not. In addition, then, to the requirements that he should not fail and should not discontinue business the obligation of the bond would be made subject to the further condition that the creditor survived the period of time covered by the contract of idemnity ; and thus by pure impli-

cation there would be written into the eighth condition heretofore quoted a contingency not therein expressed or even necessarily implied.  And in the case of a firm precisely the same situation would exist.  Undoubtedly the death of a member of a firm does by operation of law dissolve the partnership ; but such a dissolution of the firm can in no sense be said to be a discontinuance of business·by the indemnified.  The surviving partner winds up the concern.  The dissolution is ·by operation of law and not by the act of the parties and the discontinuance of business on the part of the firm is not a discontinuance *by* the firm but by operation of law ·in consequence of ·an act of God.  Obviously the term discontinuance by the indemnified has relation· to the act of the indemnified—either his voluntary act or the consequence of his voluntary act— precisely as the other condition, the failure of the creditor, relates to a situation arising from his own acts or conduct. Had the design been to constitute the death of the creditor a ground for avoiding the bond, the addition of the words " and the death of the indemnified," or words of like import, would have placed the matter beyond dispute ; and every individual purchasing such a bond would then have been advised in plain terms that the contingencies which he encountered and was obliged to avoid so as to enable him to recover on the bond, were not only his own failure in or discontinuance of business, but his death during the period covered by the indemnity.  The construction contended for by ·the appellant places death—an act of God—in the same category as discontinuance of business by the indemnified— an act of the individual.  It does not discriminate between what is the act of the party himself on the one hand, and the consequence resulting from his death, which, on the other hand, is not his act ; but makes the one the equivalent of the other insofar forth as respects the continuing validity of the bond.  And ·it does this, too, by ascribing to the words of the bond a ·meaning which, ·at best, is both strained·and unnatural.

In resisting the enforcement of an obligation of this character, upon the ground here relied on, the defendant must show that its refusal to fulfill its contract is justified by some term of defeasance contained in the undertaking itself; and unless this appears with reasonable clearness the obligor cannot escape liability. If we entertained any reasonable doubt as to the correct interpretation to be placed on the words we have been considering in the eighth condition endorsed on the bond, that doubt would be sufficient to solve the question against the defendant; because its contract to indemnify must stand in full force unless more than a doubt exists as to whether the defeasible conditions embrace the particular ground of avoidance relied on. The instruction given by the Court agrees with the views we entertain, and we accordingly affirm its judgment.

*Judgment affirmed, with costs above and below.*