## W. B. SAUNDERS COMPANY, A Body Corporate, *vs.* HARRY T. DUCKER.

*Contracts of guaranty; construction; change in parties.*

D. executed as surety a bond running to W. B. S. conditioned upon the faithful performance by the principal, the Medical and Standard Book Company of its duties as agent of the said W. B. S.; subsequently the business of W. B. S. was incorporated, and carried on under the name of the W. B. S. Company; on a suit on the bond by the latter company against D. for a default of the Medical and Standard Book Company, it was *held,* that it was not the intention of the parties to the bond that the obligation should extend to a default of the principal against the plaintiff corporation, which was not in existence at the time the bond was given.

p. 481

An agreement by D., that none of the rights of the W. B. S. Company under the said bond should be impaired, or the liability of the said D. thereunder affected by a sale of the assets of the Medical and Standard Book Company in certain insolvency proceedings, did not bind D. to pay a debt due by the latter company to the plaintiff corporation.     p. 478

A stipulation in the bond that the guaranty should cover the whole period of the agency, under whatever agreements, express or implied, altered, renewed or extended, referred only to the agency between the Medical and Standard Book Company and W. B. S.. and did not extend the bond to cover the defaults complained of by the W. B. S. Company.  p. 480

In order to arrive at the intention of the parties to a contract of guaranty, the contract itself must be read in the light of the circumstances under which it was formed.     p. 479

A contract of guaranty is *strictissimi juris;* the grantor has the right to prescribe the exact terms upon which he will

enter upon the obligation and to insist upon his discharge
if the terms are not complied with.                    p. 479

But contracts of this character must receive a reasonable con-
struction so as to give effect to the parties' intention, and to
carry out rather than defeat the purposes for which they
were formed.                                            p. 479

*Decided November 15th, 1911.*

Appeal from the Superior Court for Baltimore City (GOR-
TER, J.).

The cause was argued before BOYD, C. J., PEARCE,
BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*J. Kemp Bartlett* (with whom were *Edgar Allan Poe,
L. B. Keene Claggett* and *R. Howard Bland,* on the brief),
for the appellant.

*Edward N. Rich,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant, a foreign corporation, sued Harry T.
Ducker, the appellee, in the Superior Court of Baltimore
City. The defendant demurred to the declaration. The
Court sustained the demurrer with leave to amend. The
plaintiff declined to amend, and judgment the plaintiff has
brought this appeal.

The suit is on a guaranty in the penalty of $2,000, dated
September 26th, 1899, executed by the defendant under seal
and delivered to W. B. Saunders, of Philadelphia, Pennsyl-
vania. The declaration is a lengthy one, but only such por-
tions of it will be transcribed as will be necessary to dispose
of the legal question presented by the appeal.

Prior to the execution of the obligation sued on the defend-
ant caused to be incorporated under the laws of this State a
corporation known as the Medical and Standard Book Com-
pany of Baltimore City, and he became the president of this

company and continued as its president until the institution of this suit.

The business of the corporation was that of a dealer in medical, trade, subscription and other books. W. B. Saunders was a dealer in the class of books in which the corporation dealt, and it and the defendant solicited the agency for the sale of the books published by him. The guaranty recites that it was given for the faithful performance of services on the part of the corporation which was then about to enter into the employ of W. B. Saunders, "and to act as his agent."

The conditions of the obligation are that corporation "while acting as his agent, will be from time to time entrusted with books, moneys, valuable documents and other property belonging to the said W. B. Saunders, and will be called upon to fill positions of trust and responsibility; therefore I do firmly hold and bind myself, my heirs, executors, administrators or assigns in the above named sum, to make good and truly pay to the said W. B. Saunders, in lawful money, any loss or losses that he may sustain through the neglect or failure of the said Medical and Standard Book Company to faithfully discharge the duties and obligations imposed upon it by its position. Provided, however, that in the event of the faithful performance by the said Medical and Standard Book Company of all the duties and obligations imposed upon it and upon the surrender by it to W. B. Saunders of all the books, money, documents and other property to which he may be justly entitled at such time and in such manner as he directs, then this obligation shall be void; otherwise of full force and virtue. It is also stipulated that the suretyship hereby created shall cover and apply to the whole period of such agency under whatever agreements, express, implied, altered, renewed or extended, said agency may from time to time be conducted, as well as when said agency shall be continued by the parties under any agreement which shall have expired by time."

In October, 1901, the publishing business of W. B. Saunders was conducted by him alone under the firm name and

style of W. B. Saunders and Company, and the Medical and
Standard Book Company and Harry T. Ducker solicited the
agency of said company for the sale of its books, the said
Ducker agreeing in writing "with the said publishing house
that his aforesaid certain bond and obligation should extend
to and cover the dealings of the said Medical and Standard
Book Company of Baltimore City with both the trade book
department and the subscription book department of the said
publishing house." In January, 1906, the publishing busi-
ness of W. B. Saunders was incorporated under the laws of
Pennsylvania by the organization of the W. B. Saunders
Company, and it is alleged that "all of the assets of said
publishing house, including its claim against the said
Medical and Standard Book Company of Baltimore City for
the proceeds of books sold and not accounted for, and against
the said Harry T. Ducker, defendant, under his aforesaid
bond and obligation, were assigned, transferred and deliv-
ered to the said corporation, the plaintiff herein, with the
knowledge and assent of the said Medical and Standard Book
Company of Baltimore City and the said Harry T. Ducker,
defendant."

Subsequently the Medical and Standard Book Company
became insolvent, and receivers were appointed to take charge
of its affairs. It is alleged that in March, 1910, the defend-
ant requested the plaintiff to consent that a sale of all of the
assets of the Medical and Standard Book Company, remain-
ing unsold in the hands of receivers, should be sold to Edward
Slye and others, the former treasurer and general manager
of the Baltimore corporation for $5,000, and that the "said
Harry T. Ducker, defendant, promised and agreed with the
said W. B. Saunders Company plaintiff, that if it, the said
W. B. Saunders Company would consent that such sale
would be made by the receivers of the said Medical and
Standard Book Company of Baltimore City, that none of the
rights of the said W. B. Saunders Company, plaintiff, against
the said Harry T. Ducker, defendant, under the aforesaid

bond and obligation of the said Harry T. Ducker, defendant, should be in any manner impaired or the liability of the said Harry T. Ducker, defendant, to the said W. B. Saunders Company, plaintiff, under said bond and obligation in any manner affected, impaired or released.

The declaration avers that the plaintiff relied upon the said promise and agreement of the defendant, and gave its consent to the sale of the assets of the Medical and Standard Book Company to Slye and others, and that the sale was accordingly made.

It is then alleged "that the said Medical and Standard Book Company of Baltimore City, *while acting as agent of the plaintiff*, was from time to time entrusted with books belonging to the plaintiff, but it has failed to make good and truly pay to said plaintiff the proceeds or value of said books, whereby the plaintiff has sustained, through such failure of said Medical and Standard Book Company of Baltimore City, great loss and damage, to wit, the sum sixteen hundred and sixty three dollars and forty-nine cents ($1,663.49) with interest thereon from the 30th day of April, 1910."

It is obvious from these allegations of the declaration that the plaintiff, the Pennsylvania corporation, seeks to hold the defendant liable on the guaranty for default of the Medical and Standard Book Company, *while acting as its agent,* and the question is whether, under the facts alleged, these defaults are covered by or are within the terms of the bond.

The plaintiff's case can not be aided by the paragraph of the declaration, which has been adverted to, referring to the sale of the assets of the insolvent company, because the defendant did not promise or agree to be answerable for the defaults which are the basis of this suit. His agreement was that the rights of the plaintiff should not be impaired or the liability of the defendant affected by the sale. This is quite a different thing from a binding obligation to pay the debt due by the insolvent corporation to the plaintiff.

"A contract of guaranty or suretyship is said to be *strictissimi juris,* and one in which the guarantor has the right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself on the technical obligation." *Schoonover* v. *Osborne,* 108 Iowa, 453.

It is an established canon of construction that, "in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application; and the contract must be so construed as to give it such effect and none other, as the parties intended at the time it was made." *Bank* v. *Gerke,* 68 Md. 449; or as stated by JUDGE McSHERRY, in *Credit Indemnity Company* v. *Cassard,* 83 Md. 272, that "contracts of this character, like policies of fire insurance to which they are closely analagous, must receive a reasonable construction so as to give effect to the intention of the parties thereto, and so as to carry out rather than defeat the purposes for which they were executed. They should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability fairly within the scope or spirit of their terms."

Tested by these principles, we are of opinion that the bond sued on is not liable for the debts due by the Medical and Standard Book Company to the plaintiff. It was given to W. B. Saunders individually to indemnify *him* against the default of the Medical and Standard Book Company while acting as *his* agent; to make good and truly pay to *him* any losses which *he* might sustain through the neglect or failure of that company.

The stipulation in the bond, upon which the plaintiff relies which declares that the guaranty shall cover and apply to

the whole period of *such agency* "under whatever agreements, express, implied, altered, renewed or extended," manifestly refers to the agency created between the Medical and Standard Book Company and W. B. Saunders.

It would, we think, be an unwarranted extension of the obligation of the bond to hold that it was the intention of the parties that it should extend to and cover the defaults complained of in this case.

In *Jourdan-Marsh Company* v. *Beals,* 201 Mass. 163, a guaranty was addressed to a partnership in these words: "I hereby agree to pay all bills of whatever amount which may hereafter be contracted 'at your house' by W." Before the goods were sold to W., the co-partnership had been organized into a corporation having the same members as the partnership. The plaintiff corporation contended that by reason of the words "at your house" in the body of the guaranty, the fact that the guaranty was addressed to Jourdan, Marsh and Company was overcome, and that taking the guaranty as a whole it should be construed to be an offer to the person, or corporation who should be the proprietor of the Jourdan-Marsh store. But the Court held that the defendant was not liable on the guaranty.

We have examined the cases relied upon by the appellant, but we do not find that they fairly support the plaintiff's position. In construing the contract in the case of the *First National Bank of Dubuque* v. *Carpenter, Stibbs and Company,* 41 Iowa, 518, which was very different in its terms from the one in this case, the Court found that there was evidence to show that the defendant "had knowledge or notice that the plaintiff was cashing the very acceptances which the guaranty was *intended* to cover."

The case of the *Anchor Investment Company* v. *Kirpatrick,* 59 Minn. 378, turned upon the assignibility of the guaranty and its liability for defaults which had occurred *prior* to the assignment.

The sole question in *Rogers* v. *Harvey,* 136 S. W. Rep. 128, was the assignibility of the guaranty, and the Court

held that it was assignible under the Kentucky Statute, and that under the facts the guarantor was liable.

In the *City National Bank* v. *Phelps,* 97 N. Y. 44, it was held that the change of a State bank into a National bank was but the continuation of the same body under a changed jurisdiction, and that a continuing guaranty made to a State bank was not discharged by the change of a State bank into a National bank. To the same effect is *People* v. *Backus,* 117 N. Y. 196.

In *Springfield Lighting Company* v. *Hobart,* 98 Misso. Appeals, 227, it was held that "when two business corporations are consolidated, they produce a new legal entity which succeeds to all the rights and liabilities of both the former corporations, and in that respect is but their continuance; and a surety on the bond to one of the consolidated concerns enters into his contract with the knowledge of the rights of the consolidation, and thereby consents thereto, and he remains liable for the default of his principal to the new corporation as he was to the original concern."

It may be said that there is a conflict in the authorities as to whether a change in the corporation discharges the guarantor.

In *Crane* v. *Sprecht,* 33 Neb. 123, it was held that a guaranty to a corporation was not binding after a change in the name of the corporation, even though there was no change or alteration in the officers, management, business, or location of the place of business of the corporation. But none of these cases bear directly upon the question as to whether by a true construction of the guaranty here sued on it was within the contemplation of the parties that it should extend to the defaults of the principal in the payment of subsequent accruing indebtedness to the plaintiff corporation, which was not in existence at the time it was given. We think upon a consideration of the language employed in the bond and the circumstances attending its execution it was not the intention of the parties that it should cover such default. In all cases of this nature, the liability of the surety is more or

less a question of intention to be ascertained by reference to the terms of the guaranty, its subject matter and the surrounding circumstances.

The case of *Barclay* v. *Lucas,* 1 Term Reports, 291, decided by LORD MANSFIELD, in 1783, and cited by the appellant has been overruled by *Weston* v. *Barton* (1812), 4 Taunt. 673; *Hollond* v. *Teed,* 7 Hare, 50.

In *Lyon and Company* v. *Plum,* 75 N. J. L. 833, the Court refers to Barclay and Lucas and said: "In that case the bond was for the faithful service of one Phillip Jones in the shop and counting house of the three plaintiffs, who afterwards took in another partner, subsequent to whose admission the default occurred, and the plaintiff sued for only three-quarters of the amount in default, as their share secured to them. The judges, LORD MANSFIELD presiding, held plaintiffs entitled to recover, construing the bond in the light of their knowledge that banking and commercial houses where notoriously fluctuating in membership, and that the bond was intended to secure "the house" as a variable quantity, and arguing *ab inconvenienti* that under a contrary decision business houses would have to take new security with each change of partners, as, indeed, they would. Subsequently, however, LORD MANSFIELD himself declared, in *Weston* v. *Barton,* 4 Taunt. (Eng) 673, that *Barclay* v. *Lucas* must be taken as overruled, and in *Spiers* v. *Houston,* 4 Bligh N. S. (Eng.) 515, it was held in the House of Lords that a guaranty of moneys, advanced by a firm consisting of two persons, will not extend to a new firm in which a third person is introduced as a partner, and that payments made by the principal, after the alteration of the firm and in transactions with him are applicable to the extinction of the balance due the old firm at the date of the alteration;" and the Court further held that "the rule as to changes in the firm secured is not confined to increase in a partnership by admission of a new partner, but extends to a decrease by a voluntary act or by death, and incorporation of the partnership, the general proposition being that transaction occuring

after any material change in the status or composition of the party originally guaranteed will not be covered by the guaranty." The Court then cites a number of English and American cases in support of its conclusion.

The two Maryland cases referred to by the appellant (*Credit Indemnity Company* v. *Cassard, supra,* and *Hooper* v. *Hooper,* 81 Md. 155) do not support the plaintiff's contention. In the former case, the guaranty provided that it should become null and void "in the event of failure or discontinuance of business by the indemnified." The Court held that the death of one member of the firm was not a "discontinuance" of business within the terms of the bond, and that the surviving partner was entitled to recover on the bond for losses sustained in the sale of goods in the *lifetime* of the deceased partner.

In the latter case the Court considered the defence of limitations interposed by the defendant, and held that by a true construction of the guaranty involved in that case, the statute of limitations furnished no bar to the action. For the reasons stated the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*