ALMA CLAYBURGH, Appellant, *v.* ALBERT C. CLAYBURGH, Respondent.

First Department, December 3, 1926.

**Husband and wife — separation — construction of separation agreement — action by wife in conversion to recover value of certain personal property which husband refused to deliver — agreement provided that plaintiff would not remove any property from either of husband's residences except personal clothing and jewelry without husband's consent in writing — property alleged to have been converted belonged to wife and was set aside by her in presence of husband's secretary — general release clause did not release husband from liability for conversion — evidence shows purpose of provision was to prevent wife from taking property that did not belong to her — said agreement did not transfer wife's property to husband — husband had right to refuse permission in case of valid dispute as to title but had no right to withhold consent arbitrarily.**

This action is brought by the plaintiff to recover damages for the conversion of property by the defendant.    The parties entered into a separation agreement which provided that the plaintiff would leave the defendant's residence within about ten days and that she would not remove any property from either of defendant's residences, except her personal clothing and jewelry, unless with the express prior consent in writing obtained from the defendant.    There was evidence that the property alleged to have been converted belonged to the plaintiff but the defendant refused to permit her to remove it from his residence, although it had been set apart by her in the presence of defendant's secretary. It appears from the evidence that the purpose of the provision, requiring the written consent of the defendant, was to prevent the plaintiff from taking property from the residences of the defendant regardless of ownership.

A general release clause contained in the separation agreement cannot be construed to release the defendant from his liability arising out of his refusal to allow the plaintiff to remove her property from his residences.

Nor does said clause operate to release any claim of title by the plaintiff to the property, in reference to which there may be a dispute as to the title.

The stipulation in question, in reference to the removal of the property, cannot, under the circumstances of the case, be construed as operating to transfer the title of the plaintiff in property owned by her to the defendant.

Furthermore, the defendant's contention that the stipulation in question prohibited the plaintiff from recovering possession of the property or its value, even in a judicial proceeding, cannot be sustained, for that stipulation refers only to the actual or physical removal of the property by the plaintiff and is intended as a limitation on her right to remove the property at will.

The defendant did not have the right arbitrarily to withhold his consent to the removal of plaintiff's property, for it is an implied condition of the agreement that the defendant would give his consent within a reasonable time and would only withhold his consent where there was an honest dispute as to the title to certain property.

APPEAL by the plaintiff, Alma Clayburgh, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of New York on the 18th day of November, 1924, upon the dismissal of the complaint at the close of the plaintiff's case after a trial at the New York Trial Term before the court, a jury having been waived.

*Edmund L. Mooney* of counsel [*Wilber W. Chambers* with him on the brief; *Blandy, Mooney & Shipman,* attorneys], for the appellant.

*Max D. Steuer* of counsel [*William M. Parke* and *J. Arthur Leve* with him on the brief; *Chadbourne, Stanchfield & Levy,* attorneys], for the respondent.

FINCH, J. The meaning of one paragraph of a written agreement is the question to be determined upon this appeal. The action is at law in conversion to recover the value of certain articles of personal property. The complaint was dismissed at the close of the plaintiff's case.

Most of the facts out of which this controversy arises are not in dispute. The plaintiff was married to the defendant in 1908 and in May, 1916, the parties separated. On October 21, 1916, an agreement of separation was executed. The construction of paragraph XI of this separation agreement is the only question involved upon this appeal. It reads as follows:

" XI. The party of the second part agrees to leave, prior to November 1, 1916, the residence of the party of the first part situated at Mount Kisco, at which time the payments hereinbefore agreed to be made shall begin. The party of the second part agrees to maintain, out of the allowance hereinbefore provided, a residence for herself, separate and apart from the residences of the party of the first part, and separate and apart from any residences which the party of the first part may hereafter occupy. The party of the second part agrees that she will not remove any property of any kind either from the residence at Mount Kisco or from the residence at 318 West 81st Street, excepting her personal clothing and jewelry, unless with the express prior consent in writing thereto obtained from the party of the first part."

Prior to the separation, the parties had two residences, one at Mount Kisco, N. Y., and the other in the city of New York. At the time of the execution of the separation agreement the plaintiff was living at the Mount Kisco home. The articles of personal property involved herein were either in the New York city home or the Mount Kisco home.

Plaintiff introduced testimony in support of the allegations of her complaint showing title to the articles claimed, derived in three ways: *First,* those articles given to her by her friends and relatives; *second,* those articles which were given to her by her

husband; and *third*, those articles which were purchased by her with her own money or out of an allowance to her made by her husband as a "pin money" allowance for her personal use. Plaintiff was corroborated by a number of witnesses, some testifying to gifts made to the plaintiff both before and after marriage. Many of these gifts were of such a nature as to be of slight monetary value, having merely a sentimental value to the plaintiff as, for instance, jewelry given to the plaintiff when a little girl, by her grandmother. There was also testimony of admissions by the defendant, among others, that he had given to plaintiff an automobile and a silver service. The position of the husband upon this branch of the case is that certain of the articles claimed by the plaintiff to have been given by him to her were not so given. But any dispute as to the title of the articles, in view of the testimony of the plaintiff, presented issues of fact. These issues were not determined, but the complaint was dismissed as a question of law upon a construction of paragraph XI of the agreement in question. The plaintiff also introduced testimony showing that the tagging and setting aside by her of the articles claimed by her was done in the presence of the secretary of the defendant, some of the articles not easily removable being merely labeled, while other and movable articles were packed and removed to another room in the house. Some of the articles so designated were subsequently delivered to the plaintiff and are not included in the list sued upon. All of the articles sued for herein were so labeled. No question is raised as to the sufficiency of plaintiff's proof of value.

It appears that the paragraph of the agreement in controversy was drafted by defendant's counsel, or someone representing the defendant. Prior to the execution of the agreement, the plaintiff was to formulate a list of the personal property that she claimed was hers, which she did, as above indicated, and this list was finally made out and turned over to the defendant. At no time was any transfer or relinquishment of title to the articles made by the plaintiff.

It further appears that there was conversation at the time the agreement was drawn in regard to the reasons for inserting in the agreement the provision that the articles sued for herein were not to be removed without the written consent of the defendant, and these reasons were that the plaintiff "was a woman of very determined and violent character and that she might at any time take a truck up to the place and clean out everything that she claimed was her own."

The defendant relies upon paragraph XIV of the agreement, providing for a full discharge of all claims of the plaintiff as against the defendant. This paragraph is as follows:

"XIV. The foregoing agreement shall be in full discharge of

any and all claims and demands, of any name, nature or description, of the party of the second part as against the party of the first part."

But paragraph XIV cannot be taken out of its context as a part of the agreement and read as an isolated clause of release. This clause must be construed in connection with the agreement as a whole. When so construed, said paragraph XIV is not applicable to paragraph XI, since the latter paragraph provides in its own exclusive way how the claim of the plaintiff in that paragraph shall be dealt with. If the words of the so-called release clause, being paragraph XIV, should be held to nullify the right of the wife to recover for articles of personal property left by her in the custody of her husband, then the provision that she should not remove this property without her husband's written consent would be not only meaningless, but entirely contradictory to the clause of general release. It is, therefore, clear that said paragraph XIV, being the so-called release clause, not only has no bearing on the question of removal of the property of the plaintiff, but was not intended to have any bearing on that question.

The defendant urges that since the ownership of some of the articles claimed by the plaintiff was a matter of dispute between the parties during the negotiations, the words of release must be taken to include the title to all these articles. But just the contrary inference is deducible from the record. At no time was there transfer or relinquishment of title to any of these articles on the part of the plaintiff, but, on the contrary, the agreement provides upon its face for a surrender of the articles with the husband's consent. Furthermore, as above shown, as to many of the articles the title of the plaintiff was indisputable.

The controversy is thus narrowed to a construction of the single paragraph XI of the separation agreement. Following the general rule, the construction of this written agreement is for the court with the aid of the circumstances out of which it grew and subject to the finding of the jury as to what the facts are, if there is a conflict as to the facts. (*Reed* v. *Insurance Company*, 95 U. S. 23; Wigm. Ev. [2d ed.] § 2556.) In the case at bar the court has before it the undisputed testimony concerning the circumstances attending the making of the contract, namely, as already noted, that prior to and at the execution of this agreement the plaintiff was living in one of the houses of the defendant and thus had ample opportunity to secure to herself the advantage of a forceful taking and possession should a lawsuit thereafter arise. This important fact is evident without taking into consideration the testimony above referred to, that the reasons for the insertion in paragraph XI of the provision that no property of any kind was to be removed from

the residence at Mount Kisco or from the residence in New York city unless with the express prior consent in writing of the defendant, was that the plaintiff was of a very determined and violent character and "might at any time take a truck up to the place and clean out everything that she claimed was her own." These facts and circumstances are to be employed not for the purpose of making a new agreement for the parties, nor to add to or subtract from the agreement as made, but as a means of ascertaining the intention of the parties as contained in the agreement which they made. As was said by Judge POUND in *Atterbury* v. *Bank of Washington Heights* (241 N. Y. 231, 237): "As to what the parties did, or what words they used, no dispute arises. The question is what was the meaning and intention of the parties? The courts will not make an agreement for the parties but will ascertain what their agreement was. Although a written agreement cannot be varied by the circumstances out of which it grew and which attended its adoption, the circumstances may be resorted to for the purpose of ascertaining the standpoint of the parties in regard thereto. (*Reed* v. *Ins. Co.*, 95 U. S. 23.)"

The defendant urges that, assuming the title to these articles to have been in the plaintiff, because the paragraph provides no time limit, it was the intention of the agreement that the plaintiff should forever after be deprived of the possession of any of these articles if the defendant arbitrarily refused his consent to their removal. The circumstances and the acts of the parties refute this construction. The word " removal " has relation to a physical taking away by the plaintiff. The words " will not remove   *   *   * unless with the express prior consent " of the defendant demonstrate that the word " remove " does not relate to a taking by judicial process, since in the latter case the provision for the consent of the defendant would be immaterial and inapplicable. The entire setting of the paragraph shows that it has relation to the forceful removal by the plaintiff of the articles in question. The paragraph begins by providing that the plaintiff shall leave the residence at Mount Kisco prior to November 1, 1916, at which time the payments agreed to be made by the defendant to the plaintiff herein shall begin, and then the agreement follows that the plaintiff shall maintain a separate residence for herself and that she will not remove any property from the residence at Mount Kisco or from the New York city residence, except her personal clothing and jewelry, unless with the express prior consent in writing of the defendant. If it had been the intention of the agreement to transfer title from the plaintiff to the defendant, it would have been easy so to provide. The paragraph, however, is entirely negative and does not provide for a transfer of

title but merely puts a prohibition on the plaintiff from removing the articles from the residence of the defendant to her own separate residence. This is the literal meaning of the language " will not remove \* \* \* unless with the express prior consent " of the defendant. If a prohibition against removal without the defendant's consent is a method of transferring permanent possession and title from the plaintiff to the defendant, it is indeed a strange and circuitous method of settling the question of ownership of $75,000 worth of personal property. It would be incongruous for a person who gives or sells his property to another, to provide in the instrument of conveyance that such property should not be removed without the prior consent in writing of the grantee. It is, therefore, obvious that the parties did not intend a transfer of title by this language, but a prohibition against removal except in accordance with a time and method prescribed by the defendant or, at the most, an awaiting of a judicial adjudication. The only justification for the refusal of the defendant to permit removal of such articles concerning which there existed a valid dispute as to title, would be in order to afford an opportunity to have such an adjudication. ' The whole contention of the defendant is based upon a stretching of the words " will not remove \* \* \* unless with the express prior consent " to cover a taking by judicial process, and when this contention falls, with it falls the whole case of the defendant.

Defendant's contention that he may withhold his consent arbitrarily and indefinitely, is contrary to the general rule of construction that where no time is specified for the performance of an act which a reasonable construction of the contract indicates is to be performed, a reasonable time will be implied. In *Nunez* v. *Dautel* (86 U. S. 560) it was held that a promise to pay a certain sum as soon as a certain crop could be sold or the money raised from any other source, but which fixed no definite time for payment, was not a conditional promise, but that payment could be enforced within a reasonable time. The court said: " No time having been specified within which the crop should be sold or the money raised otherwise, the law annexed as an incident that one or the other should be done within reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named or the lapse of such time, the debt became due. ' It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could

never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice."

This is but in accordance with the general rule of construction that contracts must be given a reasonable construction, with a view to mutuality and reciprocity of rights, and that in seeking the intention of the parties, a construction which would put one party at the mercy of the other is to be avoided when the contract is susceptible of a more reasonable construction. As was said in *Genet* v. *Delaware & Hudson Canal Co.* (136 N. Y. 593, 609): " They [implied covenants] always exist where equity and justice require the party to do or to refrain from doing the thing in question; where the covenant on one side involves some corresponding obligation on the other; where by the relations of the parties and the subject-matter of the contract a duty is owing by one not expressly bound by the contract to the other party in reference to the subject of it." Also in *Schoellkopf* v. *Coatsworth* (166 N. Y. 77, 84), Judge MARTIN said: " It is a well-established canon of interpretation that in seeking for the intent of parties the fact that a construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other may be properly taken into consideration."

The covenant, therefore, on the part of the plaintiff not to remove her property without the consent of the defendant, implied a reciprocal obligation on the part of the defendant not to withhold such consent arbitrarily or for an unreasonable time. As an illustration may be cited the familiar cases where a condition is imposed that a recovery cannot be had unless the plaintiff shall first obtain a written consent or certificate. In such cases all that the plaintiff has to show in order to recover is that the consent was unreasonably, arbitrarily or capriciously withheld. (*McMahon* v. *N. Y. & Erie R. R. Co.*, 20 N. Y. 463, 466; *Thomas* v. *Fleury*, 26 id. 26; *Bowery National Bank* v. *Mayor*, 63 id. 336, 339; *Flaherty* v. *Miner*, 123 id. 382; *Thomas* v. *Stewart*, 132 id. 580; *MacKnight Flintic Stone Co.* v. *Mayor*, 160 id. 72; *People ex rel. R. T. S. Const. Co.* v. *Craven*, 210 id. 443, 449.)

We hold, therefore, that it was error for the trial court to dismiss the plaintiff's complaint.

It follows that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MCAVOY and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.