GEORGE G. SHIYA, Assignee for the Benefit of Creditors of HUDSON FOOD CORPORATION, Plaintiff. *v.* ERIC S. ERICKSON and Another, Defendants.

City Court of New York, New York County, August 29, 1935.

*Eugene S. Bibb* [*Thomas F. Compton* of counsel], for the plaintiff.

*Caverly, Dimond, Barton & O'Gorman* [*Martin Tarr* of counsel], for the defendant The Century Indemnity Company.

RYAN, J.  Action tried by the court without a jury.

This is an action brought on a bond in the sum of $1,500 made on the 25th day of May, 1928, by the defendant The Century Indemnity Company, a corporation, and Eric S. Erickson.  The defendant Erickson was not served with the summons.

The facts as shown are as follows: On February 21, 1928, Erickson sold to Steiger and Kraus his lunch car and business at 534 Atlantic avenue, Brooklyn, N. Y.  At the same time, Erickson assigned his lease thereto, expiring July 31, 1930, to said Steiger and Kraus, the vendees, and at the same time guaranteed that he would obtain for Steiger and Kraus an extension of the same lease for two and one-half years from the date of its expiration, and to secure that guaranty he deposited a check for $1,500.  On May 25, 1928, with the consent of Steiger and Kraus, the $1,500 deposit was withdrawn and a bond of The Century Indemnity Company substituted therefor, which bond specifically named Steiger and Kraus as obligees.  On December 20, 1928, about eleven months after the giving of the bond, Steiger and Kraus sold the said lunch car and business to the Hudson Food Corporation (hereinafter referred to as Hudson), and on the same day assigned to it the lease they had received from Erickson.  Hudson occupied and carried on the lunch wagon business until March 17, 1930; at which time, being in financial difficulties, it assigned for the benefit of creditors to the plaintiff, George G. Shiya.  At this time the expiring term of the lease was July 31, 1930.  It is not disputed that Hudson failed to pay the landlord the stipulated rent for the months of February and March, 1930.  The plaintiff, as assignee, paid the rent for the months of April, May and June, 1930, and demanded of the landlord an extension of the lease for the two and one-half years, which the landlord refused to give.  Hence this action brought by the assignee on the bond of The Century Indemnity Company for $1,500.

The evidence discloses that the landlord refused said extension of the lease for the reason he had not been paid rent for February and March, 1930, and further that as Hudson had assigned for the benefit of creditors it was not a desirable tenant.  Plaintiff asserts that the relationship between the assignee and the defendant surety company is that of obligee and surety on the bond and that he is

entitled to recover the sum of $1,500 on said bond running to Steiger and Kraus and dated May 25, 1928.

An examination of the bond shows that it ran to Steiger and Kraus without further agreement, except to include their " legal representatives." Thus we are presented with the first question as to whether the bond in question ever ran to Hudson. The plaintiff urges a favorable construction of the terms of the bond to him as (a) the bond was written by the defendant surety company; and (b) the same rules are now applied to bonding companies for compensation as are applied to insurance companies. The basic rule relied on by the plaintiff is contained in the maxim " *Verba fortius accipiuntur contra proferentem.*" In Bacon's Law Tracts ([1st ed. 1736], at p. 46) may be found a reference to the maxim quoted: " But now it is to be noted, that this rule is the last to be resorted to, and is never to be relied upon but where all other rules of exposition of words fail; and if any other come in place this giveth place. And that is a point worthy to be observed generally in the rules of the law, that when they encounter and cross one another in any case, it be understood which the law holdeth worthier, and to be preferred; and it is in this particular very notable to consider, that this being a rule of some strictness and rigor, doeth not as it were its office, but in absence of other rules which are of more equity and humanity; which rules you shall afterwards find set down with their expositions and limitations." The statement by Lord Bacon, just quoted, was approved and followed in the English case of *Lindus* v. *Melrose* (3 Hurl. & N. 177, 182; 157 Eng. Rep. 434, 436, opinion by Lord Coleridge). (See, also, *Foot* v. *Ætna Life Insurance Co.*, 61 N. Y. 571, 575, opinion by Earl, J.)

An insurance contract is construed in the same manner as any other contract. (*Springfield F. & M. Ins. Co.* v. *Allen*, 43 N. Y. 389, 394; *Savage* v. *Howard Ins. Co.*, 52 id. 502, 504; *Dwight* v *Germania Life Ins. Co.*, 103 id. 341, at pp. 346, 347; *Preston* v. *Ætna Ins. Co.*, 193 id. 142, 144; *Drilling* v. *New York Life Ins. Co.*, 234 id. 234, 241, opinion by Crane, J., and *Assurance Co.* v. *Building Assn.*, 183 U. S. 308, 361, opinion by Mr. Justice Shiras.) If an insurance contract be not ambiguous it is of course construed as written and agreed on between the parties. (*Appelby* v. *Astor Fire Ins. Co.*, 54 N. Y. 253, 258; *Foot* v. *Ætna Life Ins. Co., supra; Dwight* v. *Germania Life Ins. Co., supra; Nelson* v. *Traders' Ins. Co.*, 181 N. Y. 472, 474; *Preston* v. *Ætna Ins. Co., supra.*) Furthermore, the insurance contract may not be refined away by applying the rule of *contra preferentem* when it is not applicable. Such was the decision in *Guarantee Co.* v. *Mechanics Savings Bank & Trust Co.* (183 U. S. 402), where Mr. Chief Justice Fuller, writing on a

question involving a surety bond, said (at p. 419): " But this rule cannot be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements compliance with which is made the condition to liability thereon." *Richardson* v. *County of Steuben* (226 N. Y. 13) is to the same effect. Chief Judge HISCOCK, writing for the court in a case involving a surety bond (at p. 19), stated: " The rule that the liability of a surety is to be strictly construed is so often reiterated with a very general sense of its true meaning that we perhaps may profitably recall just what its application is to such a case as this. It does not mean that in interpreting the undertaking of a surety we are to be governed by different fundamental rules than those which are applicable to the construction of another contract. And least of all does it permit us to cast aside the principle applicable to all contracts that in their interpretation we are to seek for the true intent of the parties who executed them. After that intent has been discovered and the meaning of the contract determined, it is of course true that the liability of a surety is to be strictly and rigidly limited by the scope and meaning of the instrument which he has executed. (*People* v. *Backus*, 117 N. Y. 196; *Bennett* v. *Draper*, 139 N. Y. 266.) In ascertaining that intention and construing the language which has been used in a contract of suretyship, as well as in another contract, that language is to be read in the light of the surrounding circumstances. (*People* v. *Backus, supra.*)"

Now as to ambiguity: An insurance contract is ambiguous when reasonable and intelligent men differ as to the meaning of the words used. In *Kratzenstein* v. *Western Assurance Co.* (116 N. Y. 54) Judge VANN wrote (at p. 59): " Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and it is responsible for the language used and the uncertainty thereby created." (Citing cases.) Again in *Gans* v. *Ætna Life Ins. Co.* (214 N. Y. 326) Judge COLLIN wrote (at p. 330): " Where the parties by their words have left no fair reason for doubt, there is no just or defensible excuse for construction." And in the case of *Sun P. & P. Co.* v. *Remington P. & P. Co.* (235 N. Y. 338) Judge CARDOZO said (at p. 346): " We are not at liberty to revise while professing to construe." The court will always construe a contract against an interpretation that places one party at the mercy of the other side. (*Sanford* v. *Brown Bros.*, 208 N. Y. 90, 96; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 id. 125, 144; *Clayburgh* v. *Clayburgh*, 218 App. Div. 411, 417;

*Columbus Spa, Inc.*, v. *Star Co.*, 216 id. 218, 221.) Applying those rules of construction which may be gathered from the foregoing authorities, to the facts in this case, I am of the opinion: (1) The contract of suretyship here involved is unambiguous; (2) it indemnifies on certain conditions the two persons specifically named therein, to wit, Steiger and Kraus; (3) under the conditions of liability the personalities of the two obligees must be considered, and (4) the business ability and financial responsibility of Steiger and Kraus, the obligees, to pay the landlord and be considered by him as good tenants, are outstanding elements. In this connection the opinion of Chancellor KENT, reported in *Hayes* v. *Ward* (4 Johns. Ch. 123), is very expressive, where he determined the duty and responsibility of an obligee on a surety bond to the surety and the care of the *res* in the possession of the former. At page 130 he states: " A mortgage so taken by the creditor, is taken and held in trust, as well for the secondary interest of the surety, as for the more direct and immediate benefit of the creditor; and the latter must do no wilful act, either to poison it, in the first instance, or to destroy or cancel it, afterwards." To the same effect reference is made to Story on Equity Jurisprudence ([Ed. 1920] p. 137, § 325). Chancellor KENT's opinion, above referred to, has been approved in a number of cases, among which may be mentioned *Schroeppell* v. *Shaw* (3 N. Y. 446); *National Exchange Bank* v. *Silliman* (65 id. 475); *Coe* v. *Cassidy* (72 id. 133) and *Sternbach* v. *Friedman* (34 App. Div. 534). Other jurisdictions have adopted the same rule. (*City Bank* v. *Young*, 43 N. H. 457, at p. 461; *Railroad Co.* v. *Surety Co.*, 113 Me. 465, 478; 94 A. 929; *Magney* v. *Roberts*, 129 Iowa, 218, 222; 105 N. W. 430.)

Now, let us consider the rights of Hudson as *assignee of the lease* and whether such assignment made it the obligee under the bond in this action as successors of the original obligees, Steiger and Kraus. One of the earliest cases on this subject is that of *Wright* v. *Russel* (2 Wm. Black. 934; 96 Eng. Rep. 551 [1774]). In that case the defendant became surety for the faithful performance of an employee named Baird, who worked for the plaintiff, who was the obligee. Plaintiff subsequently took in a partner named Delafield. Baird, while working for the partnership, defaulted. At page 552 (96 Eng. Rep.) the court said: " Here Wright takes a clerk, when sole, with security for his good behaviour in his service. He then, by his own act, takes in a partner. From that moment the suretyship is at an end. If there is one, there may be twenty partners taken in. Is the surety liable if Baird disobeys the orders of any one of those partners? Is Baird to be subject to all the obligations that arise from this new service, and the surety answer-

able for all? Or can the surety be called upon to insure the money of all the partners? Certainly not. I will not say how far the bond may or may not be at an end even with respect to Wright's own proper money, but it certainly cannot extend to the money of other people, which is the case now before the Court."

In another case the bond ran to certain partners, one of whom, named Ainsworth, subsequently died. And the court held that the bond ceased to run. In *Meyers* v. *Edge* (7 Term Rep. 254; 101 Eng. Rep. 960) the court, by Lord KENYON, said: " Perhaps the defendant, when he entered into this contract, had great confidence in Ainsworth, and the thought that he would use due diligence in enforcing payment of the goods from Duxbury regularly as they were furnished; at least it is too much for us to say that, after Ainsworth ceased to be a partner, the defendant would have given the same credit to the remaining partners."

A similar principle was enunciated in another case where the bond ran to one Pyott, as obligee, for the faithful performance of a clerk. Pyott died. There the court held that the bond did not descend to the executor of Pyott and cover the clerk while acting for such executor. To quote from the opinion of Lord MANSFIELD, who wrote for the court: " This is a very plain case. The service in the contemplation of the parties was the service to the testator. There was no idea of carrying it farther. A trade is not transmissible; it is put an end to by the death of the trader. Executors *eo nomine* do not usually carry on a trade; if they do so, they run great risk; and without the protection of the Court of Chancery they would act very unwisely in carrying it on. The bond in question is relative to the service with Pyott, the testator. It was given as an indemnity that the clerk should be faithful to him; and should pay all the money received on his account to him, or to his executors; because money might be in his hands at the time of the testator's death, for which he could only account to the executors. So that it was the intention of the parties that the bond should not be extended beyond the life of the testator." (*Barker* v. *Parker*, 1 Term Rep. 287; 99 Eng. Rep. 1098.) In *Dry* v. *Davy* (10 Ad. & Ell. 30; 113 Eng. Rep. 12) the bond ran to a firm as obligees. One partner withdrew and the court held the bond to the three ceased, saying, " The change of partnership made an end of the guarantee." And another judge (LITTELDALE) remarked: " The circumstance of a particular person being in the firm, may be the inducement for giving and continuing the guarantee and there is nothing in the instrument in question to shew that that was not the case here." The leading English case of *Meyers* v. *Edge*, above referred to, was followed in this country in *Walsh* v. *Bailie* (10 Johns. 180). Here one

Walsh was to sell to the Shermans with the defendant as surety. Walsh got Dox to furnish the goods and it was held the bond did not protect Dox. Chief Justice KENT said: " The defendant might not have been willing to have been security for the Shermans, for goods purchased of Dox." (See, also, *Penoyer* v. *Watson*, 16 Johns. 100, and *Barns* v. *Barrow*, 61 N. Y. 39, both of which followed the case of *Meyers* v. *Edge*.) In *Friedlander* v. *N. Y. P. G. Insurance Co.* (38 App. Div. 146) a similar principle was enunciated that a bond to a firm as obligees did not continue to the surviving partners, the court saying (at p. 149): " In the case before us, the defendant's obligation was expressly to the copartnership; that copartnership was dissolved and with that dissolution the operation of the guaranty ended. *It was not assignable nor transferable*, and no new right based upon it in favor of the plaintiff as against the defendant was created." (Italics mine.) In another case the guaranty ran to a firm as obligees; and the court (WILLARD BARTLETT, J.) wrote: " The defendant executed the instrument in reliance on the integrity * * * of the firm to which the guaranty was delivered, and hence that it could not be transferred to a third party so as to be enforcible by that party." (*Brumm* v. *Gilbert*, 50 App. Div. 430, 434.) To the same effect is the case of *Bacon* v. *Grossman* (37 Misc. 165). (See, also, *Bank of Buchanan County* v. *Continental National Bank*, 277 Fed. 385; *Taylor* v. *Wetmore*, 10 Ohio, 491; *Holmes* v. *Small*, 157 Mass. 221; 32 N. E. 3; *Jordan Marsh Co.* v. *Beals*, 201 Mass. 163; 87 N. E. 471; *Saunder* v. *Ducker*, 116 Md. 474; 82 A. 154, and *Lyon Co.* v. *Plum*, 75 N. J. L. 884; 69 A. 209.)

It would seem clear, therefore, that in this case the bond running to Steiger and Kraus did not pass to Hudson by the assignment of the lease.

The case of *Peabody* v. *Richard Realty Co.* (69 Misc. 582; affd. without opinion, 145 App. Div. 903; affd., 207 N. Y. 642) is distinguishable from the case at bar. There the bond ran to the landlord, " The Peabody Realty Company," as obligee and owner, which was a family organization, the entire stock of which was owned by the Peabodys. Thereafter on the dissolution of that company, the Peabodys as stockholders took back the ownership of the hotel. No point was made by the National Surety Company of any change of actual obligees as they were the same as stockholders as they were afterwards as owners in common and assignees of the bond. We have observed in the case at bar that Steiger and Kraus were individually and specifically named as obligees and they were in no manner, shape or form connected with or part of Hudson, to which they had assigned their lease. The situation presented is, therefore, quite different, as I consider the personalities of Steiger

and Kraus, the original obligees, and their care of the leasehold as tenants were of first importance herein. Nor do the words " legal representatives " written in the bond to Steiger and Kraus help the plaintiff's cause. A " legal representative " collects for some one else, while an assignee collects for himself. This seems to be the fundamental distinction between the two expressions. The expression has been frequently passed on by the courts. In *Briggs* v. *Walker* (171 U. S. 466) Mr. Justice GRAY wrote (at p. 471): " The primary and ordinary meaning of the words ' representatives,' or ' legal representatives,' or ' personal representatives,' when there is nothing in the context to control their meaning, is ' executors or administrators,' they being the representatives constituted by the proper court." To the same effect reference is made to *Griswold* v. *Sawyer* (125 N. Y. 411); *Sulz* v. *Mutual Reserve Fund Life Assn.* (145 id. 563); *Mathews* v. *American Central Ins. Co.* (154 id. 449); *Leonard* v. *Harney* (173 id. 352); *Rockland-Rockport Lime Co.* v. *Levy* (203 id. 469).

Applicable particularly to the case at bar is that of *Geoffroy* v. *Gilbert* (5 App. Div. 98; affd. on opinion below, 154 N. Y. 741). Mr. Justice RUMSEY, writing for the court (at p. 102), said: " The phrase ' legal representatives ' ordinarily means executors or administrators, *and, in the absence of any proof requiring a different meaning to be given to that phrase, it must be thus construed.*" (Italics mine.) To the same effect is *Vanderbeck* v. *Protected Home Circle* (98 Misc. 691, 692). In other jurisdictions the cases are in accord. (*Cox* v. *Curwen*, 118 Mass. 198; *Alexander* v. *McPeck*, 189 id. 34; 75 N. E. 88; *Conley* v. *Jamison*, 205 Iowa, 1326; 219 N. W. 485.) In a case in Mississippi the court held that the use of the words " legal representatives " excludes the idea of assignees, saying: " An assignee claims in his own right and not in a representative character," (*Fuller* v. *Dairs*, 63 Miss. 78.)

Assuming for the sake of the discussion that the bond in question had passed to Hudson with the assignment of the lease, there are two insuperable objections to Hudson claiming any rights thereunder: (1) By not paying the rent promptly and regularly to the landlord, Hudson " poisoned " the lease, using the language of Chancellor KENT in the case of *Hayes* v. *Ward* (*supra*); and (2) by not doing its duty as trustee of the lease it breached the contract and may not thereafter bring an action against the defendant for a subsequent breach. The rule is stated in the case of *Bowes* v. *Shand* (L. R. 2 App. Cas. 455, 468) as follows: " The plaintiff who sues upon that contract, has not launched his case until he has shewn that he had tendered that thing which has been contracted for and if he is unable to shew that, he cannot claim any damages

for the non-fulfillment of the contract." That case was quoted with approval in *Cleveland Rolling Mill Co.* v. *Rhodes* (121 U. S. 255, 264). (See, also, *Pope* v. *Porter*, 102 N. Y. 366, 371.) The rule was also reiterated in the case of *National Surety Co.* v. *Long* (125 Fed. 887), where Mr. Justice Sanborn said (at p. 892): " He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform." The plaintiff, as assignee for creditors of Hudson, here has of course no greater rights than his assignor. In *Bennett* v. *Bates* (94 N. Y. 354, 363) Ruger, Ch. J., writing for the court, stated: " By repeated decisions of this court the doctrine is established that the assignee of a mortgage takes it subject to all of the equities existing between the original parties thereto, and so far as the remedy thereon is concerned stands precisely in the shoes of his assignor." (See, also, *Bush* v. *Lathrop*, 22 N. Y. 535; *Shafer* v. *Reilly*, 50 id. 61; *Green* v. *Warnick*, 64 id. 220; *Halsey* v. *Jewett Dramatic Co.*, 190 id. 231, and *Union Trust Co. of Rochester* v. *Allen*, 239 App. Div. 661.)

In view of the foregoing it seems clear to me that the plaintiff has no cause of action against The Century Indemnity Company, and the complaint should be dismissed as against it and a verdict directed in favor of said defendant.

Exception to plaintiff. Fifteen days' stay and thirty days to make a case.